### NEW MEXICANS FOR BILL RICHARDSON, Bill Richardson, Plaintiffs–Appellants,

v.

### Stephanie GONZALES, Secretary of State; Tom Udall, Attorney General of the State of New Mexico; Henry Valdez, District Attorney, First Judicial District, Defendants–Appellees.

No. 94–2190.

United States Court of Appeals, Tenth Circuit.

Sept. 6, 1995.

Henry Mark Holzer (Mel E. Yost, with him on the briefs), of Scheuer, Yost & Patterson, Santa Fe, NM, for plaintiffs-appellants.

John H. Clough (Tom Udall, Attorney General, State of N.M., and Robert T. Booms, Assistant Attorney General, with him on the brief), Assistant Attorney General, Santa Fe, NM, for defendants-appellees.

Before BRORBY, LOGAN and KELLY, Circuit Judges.

BRORBY, Circuit Judge.

■ The sole question presented by this appeal is whether plaintiffs' constitutional challenge to New Mexico's restriction on the use of contributions solicited for or received in a federal election campaign for purposes of a state election campaign is ripe for review. We hold that it is, and accordingly, we reverse the district court's order to the contrary.

## BACKGROUND

In 1993, New Mexico enacted comprehensive election and campaign related legislation. That legislation provides, in pertinent part: "No contributions solicited for or received in a federal election campaign may be used in a state election campaign." N.M.Stat.Ann. § 1–19–29.1B (1994 Cum. Supp.) (the "statute"). Violation of this provision constitutes a crime. N.M.Stat.Ann. § 1–19–36.A (1994 Cum.Supp.). The plaintiffs, Congressman Bill Richardson, the elected Representative to the United States Congress from the State of New Mexico's Third Congressional district, and New Mexicans for Bill Richardson ("NMFBR"), a principal campaign committee whose purpose is to raise funds to support various political candidacies of Bill Richardson and which currently possesses approximately $500,000 in federal campaign funds for that purpose (referred to collectively as "Congressman Richardson"),

filed suit in federal district court seeking a declaratory judgment and permanent injunction of this portion of the statute on the grounds it constitutes a facial violation of the First Amendment and is preempted by federal election law legislation. The suit named Stephanie Gonzales, Secretary of State of the State of New Mexico, Tom Udall, Attorney General of the State of New Mexico, and Henry Valdez, District Attorney of the First Judicial District of the State of New Mexico as defendants (referred to collectively as "New Mexico").

In response to Congressman Richardson's complaint, New Mexico filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) arguing the claim presented was not yet ripe for review. More specifically, it argued that "until such time as Congressman Richardson can represent to the Court that he intends to run for a state elective office, this matter is not ripe for adjudication. Neither he nor New Mexicans for Bill Richardson can demonstrate any concrete hardship until his plans concerning state elective office are more definite."

The facts and allegations before the district court bearing on ripeness stemmed from Congressman Richardson's complaint, affidavit, and answers to interrogatories, NMFBR's answers to interrogatories, a collection of newspaper articles, the affidavit of the treasurer of NMFBR, and the affidavit of a Congressman Richardson contributor. These documents established, *inter alia*, the following facts.

NMFBR's purpose "is to raise funds to support various political candidacies, past, present and future of Bill Richardson," it has nearly $500,000 on hand, and "Bill Richardson has been, and is, the beneficiary of [its] fund raising efforts." Congressman Richardson has not raised funds upon any representation that they would be used for "any specific purpose or in any particular campaign, state or federal." In his affidavit, Congressman Richardson stated:

> [S]ome donors have made it clear that they would be less prone to contribute if there were any restrictions on the use of their contributions, for a state campaign or for any other purpose.... Since the chal-

lenged statute was enacted last spring, this attitude has caused me to be reluctant to solicit campaign funds for unrestricted purposes, including specifically for the purpose of running for state elective office.... Indeed, with regard to running for state elective office, from the beginning of my political career I have made it clear that I had an interest, one day, in serving in such a capacity.... In that connection, I can state categorically that at this time I have not foreclosed the possibility of running for state elective office at the next general election.

These same statements were given in response to New Mexico's interrogatories. Also before the district court were a number of newspaper articles spanning the last several years in which Congressman Richardson's aspirations to hold state office are apparent.

The affidavit of the treasurer of NMFBR made many of the same points: NMFBR raised funds on behalf of Congressman Richardson with no state/federal distinction; Congressman Richardson has made no such distinction in his fund raising efforts; and potential contributors would be less prone to donate if there were limitations on the use of their contributions.

The affidavit of John Loehr, a Congressman Richardson supporter, stated:

When my contributions to [NMFBR] were solicited, no representations were made to me that they would be used solely for a federal election campaign(s) or that they would not be used for a state election campaign(s).

When I made my contributions to [NMFBR], I did so without restriction and in the belief that my donations could, and might well, be used for a state election campaign—which I had long been aware Bill Richardson was interested in running some day. Indeed, I would have been less prone to make a political contribution to [NMFBR] if restrictions were placed on the use of that contribution(s) because I want Bill Richardson to run for state office. My contributions to [NMFBR] have been made, in part, in order to make it easy and practical for him to do so. To

put the point another way: *I made my contributions to Bill Richardson through [NMFBR] in contemplation of his running for state office some day.*

[H]ad I known in advance that my contributions to [NMFBR] could not be used by Bill Richardson to run for state office, I probably would not have made those contributions. Indeed, if the challenged statute is held constitutional, I probably would not contribute any further sums to [NMFBR].

(Emphasis in original.)

After considering the arguments of counsel and the facts before it, the district court declined to reach the merits of Congressman Richardson's claims and instead, granted New Mexico's motion to dismiss on the ground that the controversy was not yet ripe for review. More specifically, the district court held:

Because plaintiffs have expressed no firm interest in spending money in connection with a state election campaign and Congressman Richardson has shown no definite interest in running for state elective office, plaintiffs are not currently forced to choose between violating the law and pursuing their first amendment rights. There is no impact on plaintiffs which is "sufficiently direct and immediate." In its current posture this case fails to portray plaintiffs suffering substantial hardship as a result of my withholding judicial review. Of course, if plaintiffs sometime in the future present a more detailed and solid factual record regarding their intentions to expend funds in connection with a state election campaign, plaintiffs would not be precluded from again seeking relief in this court.

Congressman Richardson brings this appeal seeking review of the district court's order concluding the challenge to New Mexico's law is not yet ripe for review.

## DISCUSSION

### Standard and Scope of Review

The question of whether a claim is ripe for review bears on a court's subject matter jurisdiction under the case or contro-

versy clause of Article III of the United States Constitution. *See, e.g., ACORN v. Tulsa,* 835 F.2d 735, 738 (10th Cir.1987). The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1). *See* Fed.R.Civ.P. 12(b)(1); *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989); 5 Wright & Miller, *Federal Practice & Procedure;* Civil 2d § 1350 (1969). It is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute. *Renne v. Geary,* 501 U.S. 312, 317, 111 S.Ct. 2331, 2337, 115 L.Ed.2d 288 (1991). A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court. "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair,* 880 F.2d at 201. Ripeness is a question of law, which we review de novo. *Powder River Basin Resource Council v. Babbitt,* 54 F.3d 1477, 1483 (10th Cir.1995). With these principles in mind, we turn to the question of ripeness.

### Ripeness and the First Amendment

■ In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy. "[R]ipeness is peculiarly a question of timing," *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1975), intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in " 'cleancut and concrete form.' " *Renne,* 501 U.S. at 322, 111 S.Ct. at 2339 (quoting *Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 584, 67 S.Ct. 1409, 1427, 91 L.Ed. 1666 (1947)).

■ As a general rule, determinations of ripeness are guided by a two-factor test, " 'requiring us to evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration.' " *Sierra Club v. Yeutter,* 911 F.2d 1405, 1415 (10th Cir.1990) (quoting *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. at 1515). In determining whether an issue is fit for judicial review, the central focus is on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Wright, Miller & Cooper, *Federal Practice & Procedure,* § 3532 at 112. To this end, courts frequently focus on whether a challenged government action is final and whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed. *See Sierra Club,* 911 F.2d at 1415; *El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 495 (1st Cir.1992). In assessing the hardship to the parties of withholding judicial resolution, our inquiry " 'typically turns upon whether the challenged action creates a "direct and immediate" dilemma for the parties.' " *El Dia,* 963 F.2d at 495 (quoting *W.R. Grace & Co. v. United States EPA,* 959 F.2d 360, 364 (1st Cir.1992)).

■ The customary ripeness analysis outlined above is, however, relaxed somewhat in circumstances such as this where a facial challenge, implicating First Amendment values, is brought. *E.g., ACORN,* 835 F.2d at 739; *Martin Tractor Co. v. Federal Election Comm'n,* 627 F.2d 375, 380 (D.C.Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980). Thus, while it is true that "the mere existence of a statute … is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms," *National Student Ass'n v. Hershey,* 412 F.2d 1103, 1110 (D.C.Cir.1969), in the context of a First Amendment facial challenge, "[r]easonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim," *Martin Tractor,* 627 F.2d at 380. *See also Babbitt v. United Farm Workers Nat'l Union,* 442 U.S.

289, 298–99, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979). The primary reasons for relaxing the ripeness analysis in this context is the chilling effect that potentially unconstitutional burdens on free speech may occasion:

> First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss. In a wide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill.

13A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3532.3 at 159, *see also ACORN,* 835 F.2d at 740.

■ Thus, our ripeness inquiry in the context of this facial challenge to New Mexico's election law statute focuses on three elements: (1) hardship to the parties by withholding review; (2) the chilling effect the challenged law may have on First Amendment liberties; and (3) fitness of the controversy for judicial review. Our ripeness inquiry is not to be applied mechanically but rather, with flexibility, *Sierra Club,* 911 F.2d at 1416.

### Ripeness of the Controversy

In assessing the hardship of forestalling judicial resolution of the constitutionality of the New Mexico statute, our inquiry must focus on whether the " 'challenged action creates a "direct and immediate" dilemma for the parties.' " *El Dia,* 963 F.2d at 495 (quoting *W.R. Grace & Co.,* 959 F.2d at 364). We have no doubt that the statute has a direct and immediate effect on Congressman Richardson's exercise of his First Amendment liberties. *See United States v. Kokinda,* 497 U.S. 720, 725, 110 S.Ct. 3115, 3118–19, 111 L.Ed.2d 571 (1990) (solicitation of funds is a form of expression protected by the First Amendment).

The facts presented to the district court undoubtedly show the existence of the New Mexico statute has created a direct and immediate dilemma with respect to Congressman Richardson's exercise of his First Amendment liberties. The affidavits submitted indicate that in the past, Congressman Richardson has solicited campaign contributions on an "unrestricted" basis, and as the affidavit of John Loer demonstrates, the lack of such restrictions have been beneficial to Congressman Richardson in obtaining contributions. Congressman Richardson has, however, as a result of the statute, grown reluctant to solicit funds in the usual manner, *i.e.,* for unrestricted purposes. This has had the further effect of reducing the likelihood that Congressman Richardson will be able to obtain funds from contributors due to the limited use for which those funds could be put under the statute. The dilemma thereby created is this: If Congressman Richardson is to either inform potential contributors of the statutorily imposed restrictions on the use to which their donations can be put, or if the Congressman expresses a generalized intent of following all applicable laws regarding campaign contributions and expenditures, he will at the same time be impairing his ability to effectively exercise his First Amendment liberties.

New Mexico argues, however, that the statute creates no such dilemma because it does not directly affect Congressman Richardson's ability to raise funds per se, but only to spend those funds in a state election campaign. Thus, the harm created by the statute only could be realized once the need or desire to spend arises. This in turn, according to New Mexico, can only occur once Congressman Richardson announces his intention to run for state elective office.

It is true the statute is directed, at least by its terms, at expenditures and not fund raising. It does not follow from this, however, that the hardship it creates can only be strictly expenditure-related. Clearly, as shown above, the manner in which campaign contributions may be spent can have a direct impact on how, and the extent to which, those contributions are raised. Thus, regardless of whether the statute's effect on fund raising is characterized as a "direct" restriction or something else, it is clear to us that the mere existence of the New Mexico statute has caused Congressman Richardson to engage in the activity of fund raising differently than he has in the past, rendering his ability to raise funds, and thus exercise

his constitutionally protected rights, less effective.

While the extent to which his fund raising activities have been impaired cannot be quantified or estimated with anything approaching precision, there is no doubt that the statute has created a direct and immediate dilemma regarding Congressman Richardson's fund raising activities. Consequently, this case is clearly distinguishable from those in which courts have declined review on the ground that the harm sought to be avoided was contingent upon uncertain or speculative future events. *E.g. Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 163–64, 87 S.Ct. 1520, 1524–25, 18 L.Ed.2d 697 (1967). There is, on the record before us, nothing speculative or uncertain about the harm to Congressman Richardson's fund raising activities brought about by the limitations on spending imposed by the statute.

■ Furthermore, we disagree with the proposition that no direct or immediate dilemma is faced by the Congressman until and unless he announces his candidacy for state office. "When contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.'" *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2309 (quoting *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974)). The principle that "'[o]ne does not have to await the consummation of threatened injury to obtain preventive relief,'" *id.* (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)), "is particular-

ly true in the election context, where we [the Supreme Court] often have allowed preenforcement challenges to restrictions on speech," *Renne,* 501 U.S. at 332, 111 S.Ct. at 2344–45 (White, J., dissenting). On the other hand, the threat of prosecution must be a credible one, *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745–46, 35 L.Ed.2d 201 (1973), for "'persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs,'" *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2309 (quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749–50, 27 L.Ed.2d 669 (1971)).

For example, in *Babbitt,* the Supreme Court considered whether an action brought by The United Farmworkers Union challenging the constitutionality of the Arizona Agricultural Employment Relations Act was ripe for review. Particularly relevant is the Court's analysis of the statute's publicity provision requiring that consumer publicity not be dishonest, untruthful, or deceptive. The union had shown it had engaged in such publicity in the past and pleaded that erroneous statements would inevitably occur in the future. Given that the State had not disavowed its intention of invoking criminal penalties, the Court concluded the union was, therefore, "not without some reason in fearing prosecution," in spite of the fact that no actual threats of prosecution had been made. "In effect, a reasonable fear as to the possible future application of an ambiguous statute was found enough," 13A Wright, Miller & Cooper, *Federal Practice & Procedure,* § 3532.5 at 181, to support the conclusion that the claim was ripe for review.

Guided by the Supreme Court's analysis in *Babbitt,*[1] we conclude Congressman Richard-

---

1. In its analysis, the district court here relied heavily on the case of *Renne v. Geary,* 501 U.S. 312, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). While *Renne* involved a First Amendment challenge to an election law provision, we find the case distinguishable for myriad reasons. Most importantly, in terms assessing the threat of future prosecution, we regard *Renne* as finding no such threat under the facts presented based, in large part, on the dubiousness of plaintiffs' standing to bring the case.

The *Renne* plaintiffs, a group of individual voters, sought a declaration that the California Constitution's prohibition on *political party* or *central*

*committee* endorsements of candidates for nonpartisan office violated the First and Fourteenth Amendments. After expressing "serious" questions as to the plaintiffs' standing—given that the law regulated political parties and central committees whereas the plaintiffs were a group of individual voters—the Court turned to the issue of ripeness. The Court found the controversy to be unripe based, in part, on the fact that the record before it contained "no evidence of a credible threat that [the California Constitution would] be enforced, *other than against candidates in the context of voter pamphlets.*" *Id.* at 322, 111 S.Ct. at 2339 (emphasis added). In short,

son's fears of prosecution are reasonable and support a finding of ripeness. The record before us contains no affirmative evidence that prosecution for violating the statute is imminent. However, New Mexico has not affirmatively disavowed any intention of bringing criminal prosecution against Congressman Richardson should he spend federally raised money for pre-announcement activities for state elective office or if he should spend federally raised money in support of another individual's state campaign.[2] In this regard, it is critical to note Congressman Richardson has presented public records to this court demonstrating that he has made a number of campaign contributions in support of officials who hold or have run for state elective office, including the Mayor of Albuquerque, since enactment of the New Mexico statute.[3] Because such contributions might constitute a violation of the statute, we conclude that the risk of prosecution faced by the Congressman is indeed credible. In fact, unlike the claimants in *Babbitt*, who could only assure the Court that violations of the statute would occur in the future, the Congressman has shown that possible statutory violations already have occurred which might subject him to criminal prosecution.

An added difficulty in focusing our ripeness inquiry, as New Mexico has done, on

whether and when Congressman Richardson announces his candidacy for state office, is the problem encountered in trying to figure out what the New Mexico statute prohibits. As the district court appropriately observed, it is not a model of clarity. For instance, does the statute simply govern the expenditures of federally raised campaign funds of a candidate when that same candidate runs for state elective office, as New Mexico urges, or does the statute proscribe spending any federally raised funds for any state election? Could Congressman Richardson use his campaign funds to support the state election campaigns of others? If so, then clearly the district court's and New Mexico's focus on the fact that Congressman Richardson has evinced no firm plans to run for state elective office would not be dispositive, for he could face criminal prosecution even if he never runs for state office but contributes to the campaigns of other state officials.

Another manifest difficulty with the statute is the meaning of the term "election campaign." How does one distinguish, assuming that such a distinction is possible, between an election campaign and activities of a potential candidate who has not declared his or her intention to seek office? Does the statute regulate only the expenditures of de-

the controversy was deemed to be unripe in part because there was no evidence the constitution would have been enforced against individual voters, but only candidates. In our judgment, no such threat existed that the plaintiffs did not, in fact, have standing to challenge this constitutional provision. Because the provision contained no enforcement mechanism against individual voters and, indeed, did not even regulate the conduct of individual voters, it follows logically that they faced no threat of prosecution by virtue of that provision.

This reading of *Renne* is bolstered by Justice Stevens' concurring opinion. After expressing his reservations concerning the ripeness of the voters' claim, Justice Stevens stated: "If such a challenge had been brought by a political party or a party central committee, and if the complaint had alleged that these organizations wanted to endorse, support, or oppose a candidate for nonpartisan office but were inhibited from doing so because of the constitutional provision, the case would unquestionably be ripe." *Renne*, 501 U.S. at 325, 111 S.Ct. at 2340–41 (Stevens, J., concurring) (citing *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989)).

**2.** We note, however, that even if such representations had been made, it is unlikely they would alter our conclusion here. See *Abbott Laboratories*, 387 U.S. at 154, 87 S.Ct. at 1518–19.

**3.** New Mexico argues we should not consider these contributions in our deliberations on the ground this evidence was not presented to the district court. In response, counsel for Congressman Richardson represented to this court at oral argument that this evidence was before the district and directed our attention to a specific page in the record on appeal. However, that citation contains no reference to these contributions. Nevertheless, "since ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern" our consideration of this case. *Regional Rail Reorganization Act Cases*, 419 U.S. at 140, 95 S.Ct. at 356–57. The record of Congressman Richardson's contributions are public and have been pointed out to this court, and New Mexico has had a full opportunity to address the significance of them. Accordingly, we find it appropriate to consider these contributions in our deliberations.

clared candidates for state office, as New Mexico argues, or are pre-declaration expenditures also covered? For example, would Congressman Richardson expose himself to potential criminal prosecution if he commissioned a poll to test the waters for a state election campaign?

■ We do not, of course, raise these questions in order to answer them here, since the constitutionality of the statute and its application in specific contexts is not before us.[4] Rather, we point out these difficulties because they have, in our judgment, a direct bearing on the question of the chilling effect the statute has on the Congressman's First Amendment rights and also casts considerable doubt on the efficacy of focusing on Congressman Richardson's post-announcement election expenditures.

■ It is generally accepted that the arguable vagueness of a statute greatly militates in favor of finding an otherwise premature controversy to be ripe. *E.g., Martin Tractor*, 627 F.2d at 384 ("the extent of the chill upon First Amendment rights induced by vague or overbroad statutes is the most significant factor in determining whether an otherwise premature or abstract facial attack ... is ripe for decision"). The reason being, "[i]f the provision were truly vague," then the party challenging its constitutionality in a facial attack "should not be expected to pursue their collective activities at their peril." *Babbitt*, 442 U.S. at 303, 99 S.Ct. at 2311.

Nowhere can the justification for this rule be seen more clearly than in the present case. New Mexico has argued Congressman Richardson's claims are not yet ripe because he has yet to declare his candidacy for state office. Yet it is far from clear whether the statute governs the expenditures of the Congressman irrespective of whether he ever becomes a candidate for state office. Likewise, it is not clear whether preliminary, pre-election campaign expenditures would be covered by the statute's restrictions. These ambiguities leave Congressman Richardson in the perilous position of guessing at the meaning the state authorities or courts will impute to the statute, and either spending his federally raised campaign funds and risking prosecution or taking a more cautious approach and foregoing the exercise of his constitutionally protected liberties. Blind adherence to the possible meaning of the statute could prove, and apparently has proved, costly. The alternative to compliance, with its attendant possibility of criminal prosecution, may prove even more costly to a potential state political candidate and sitting member of Congress. The very facts that Congressman Richardson has money to spend, has indicated a desire to spend it in state election campaigns by both words and deeds, *see, supra* p. 1501, and there is no way for him to know with any degree of certainty which expenditures are permissible and which carry the threat of prosecution, all weigh heavily in favor of finding this case ripe for review.

In short, we find that the statute has created a direct and immediate dilemma for Congressman Richardson and that he should not have to risk prosecution, under a statute whose scope is unclear, before his challenge to the constitutionality of that statute is ripe.

Finally, we turn to whether the issues presented are fit for review. In doing so, we focus on whether the challenged law turns upon strictly legal issues or requires facts that may not yet be sufficiently developed.

---

4. New Mexico has taken the position that in the event we find this dispute ripe for review, we should go on to address the merits in the interest of judicial economy. We decline to do this for two reasons. First, Congressman Richardson has appealed the district court's order dismissing the suit as unripe. It is that ruling Congressman Richardson has addressed in his briefs to this court, not the substantive First Amendment and preemption claims raised below. As such, we believe it would be manifestly unfair to reach the substantive issues when Congressman Richardson has not taken the opportunity (and justifiably so) to present his arguments on these issues to the court. Second, because the district court dismissed the suit as unripe, we do not have the benefit of its analysis of the New Mexico statute or the problems the parties might see in any such analysis. Thus, while the substantive issues presented are strictly legal ones which we would review de novo, we are of the opinion that any benefits regarding judicial economy do not outweigh the prudential justifications for withholding judgment on the merits of the case at this time.

*See Sierra Club,* 911 F.2d at 1415.[5] Congressman Richardson's challenge to the New Mexico statute presents a strictly legal question. "[A] first amendment challenge to the facial validity of a statute is a strictly legal question; it does not involve the application of the statute in a specific factual setting." *ACORN,* 835 F.2d at 740. In light of our prior conclusions, we also deem this dispute sufficiently concrete as it neither hinges on uncertain future events nor is further factual development required.

Therefore, the order of the district court finding this case unripe for review is **REVERSED,** and the case is **REMANDED** for such further and necessary consideration as is appropriate.

PAUL KELLY, Jr., Circuit Judge, dissenting.

I would affirm the district court's judgment dismissing the action for lack of ripeness. Aplt.App. 168. Although this case involves potential First Amendment issues, what is completely lacking is any actual or imminent enforcement of the challenged provision, N.M.Stat.Ann. § 1–19–29.1(B) (1994 Supp.). The court acknowledges as much, Ct.Op. at 1502, but then finds a credible threat of prosecution.

Merely because the state has not "affirmatively disavowed any intention of bringing criminal prosecution against Congressman Richardson," Ct.Op. at 1502, does not satisfy Plaintiff's burden of showing a credible threat of prosecution; at this point, any fears of prosecution are imaginary and speculative. Likewise, the affidavits submitted by Congressman Richardson and the Treasurer of New Mexicans for Bill Richardson (NMFBR) contain vague, unsubstantiated, and wholly speculative hearsay about the adverse effect of the statute on fundraising ability:

> To the best of my recollection, although I do not recall the details, some donors have made it clear that they would be less prone to contribute if there were any restrictions on the use of their contributions, for a state campaign or for any other purpose.

Aplt.App. 51–52 (Richardson affidavit ¶ 6); 67 (Baca affidavit ¶ 6). The affidavit of Congressman Richardson's supporter contains similar, equivocal statements:

> Indeed, if the challenged statute is held constitutional, I probably will not contribute any further sums to New Mexicans for Bill Richardson—and thus my contributions can no longer be used to foster and support a state election campaign for Bill Richardson.

Aplt.App. 71 (Loehr affidavit ¶ 7). No one has claimed that Congressman Richardson is somehow precluded from raising funds for a future state election campaign through another vehicle. Moreover, adjudication of this lawsuit cannot guarantee contributors an absence of any restrictions, federal or state, on the use of their contributions.

The apparent restriction of the statute certainly could be challenged when, and if, Congressman Richardson decides to run for state office in the next general election, which will occur in 1998. Requiring this case to be decided so far in advance, without any concrete facts, rules out the possibility that state courts will supply a narrowing construction of the statute and will result in a wholly advisory opinion. *See Renne v. Geary,* 501 U.S. 312, 323, 111 S.Ct. 2331, 2339–40, 115 L.Ed.2d 288 (1991) (citing *Longshoremen's Union v. Boyd,* 347 U.S. 222, 224, 74 S.Ct.

---

5. Many ripeness cases require finality of the government action that is challenged. This requirement is intended, in part, to guard against courts passing on the legality of agency actions that do not, in and of themselves, alter or burden the rights, duties or obligations of the claimant. *See Abbott Laboratories,* 387 U.S. at 151–52, 87 S.Ct. at 1516–17; *Sierra Club,* 911 F.2d at 1417; *El Dia,* 963 F.2d at 496. For example, orders that merely embody a precursor to the later formulation of actual regulations will, as a general rule, not support a finding of ripeness. *E.g., id.;*

*Roosevelt Campobello Int'l Park Comm'n v. United States EPA,* 684 F.2d 1034, 1040 (1st Cir.1982) (declining to review, as unripe, a directive for " 'further administrative action' " which, in and of itself, "makes no change in the status quo"). There is no doubt that New Mexico's election law statute is final. The challenged provision itself delineates the proscribed conduct and neither directs nor requires further administrative or legislative enactments for its effect. In short, it is definitive, having the status of law mandating its immediate compliance.

447, 448–49, 98 L.Ed. 650 (1954)). I respectfully dissent.