FILED
United States Court of Appeals
Tenth Circuit

April 23, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

     Plaintiff - Appellee,

v.

A-QUALITY AUTO SALES, INC.;
FELICIA RICHESIN, individually and as
owner of A-Quality Auto Sales, Inc.;
SHAWN RICHESIN, individually and as
owner of a A-Quality Auto Sales, Inc.,


     Defendants - Appellants,

and

RNS AUTO SERVICES, LLC; SAM
MONTOYA, individually and as owner
and principal of RNS Auto Services, LLC;
MIKE KOTA; GLYNN PATRICK
AGUILAR,

     Defendants.

No. 23-2113

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:22-CV-00545-KWR-LF)**

_____

Geoffrey R. Romero, Law Offices of Geoffrey R. Romero (Phillip G. Sapien and
Joseph A. Sapien, Sapien Law, LLC, with him on the briefs), Albuquerque, New Mexico,
for Defendants – Appellants.

Jennifer A. Noya, Modrall, Sperling, Roehl, Harris & Sisk, P.A. (Shannon N. Nairn with her on the brief), Albuquerque, New Mexico, for Plaintiff – Appellee.

_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

In this insurance dispute case, Appellants seek reversal of the district court's entry of declaratory judgment that the amount available under an insurance policy is at most $500,000 rather than $1,000,000. Specifically, Appellants assert that (1) the dispute was not ripe for resolution under Article III of the Constitution, (2) two different abstention doctrines should have caused the district court to stay or dismiss the case, and (3) summary judgment was prematurely granted against them before they could take discovery to develop material facts necessary to oppose summary judgment.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's entry of declaratory judgment.

## I.    BACKGROUND

In January 2016, Felicia and Shawn Richesin purchased a Subaru at an auto auction with the intent to conduct any necessary repairs before reselling the vehicle from the dealership they owned, A-Quality Auto Sales, Inc. (together with Felicia and Shawn Richesin, the "Richesins"). Before reselling the vehicle, the Richesins took it to Sam Montoya d/b/a RNS Auto Services (together with its principals and

2

employees, "RNS") for a mechanical evaluation, inspection, and repairs. On February 2, 2016, the Richesins retrieved the Subaru from RNS, but when they drove it onto the highway, they began noticing mechanical issues with the car. The Richesins pulled onto the side of the highway where Ms. Richesin exited the vehicle and was struck by another car, causing severe injuries.

At the time of the incident, RNS had an effective garage insurance policy (the "Policy") from Travelers Casualty Company of America ("Travelers"). The Policy provided commercial general liability coverage with a per-occurrence limit of $500,000, and a "General Aggregate" limit of $1,000,000. App. Vol. II at 323. The Policy defined "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*

The driver of the vehicle that struck Ms. Richesin was underinsured, so the Richesins looked to RNS and its insurer, Travelers, for additional compensation for her injuries. On April 16, 2016, Travelers offered the Richesins $500,000—what they believed to be the Policy limit—in exchange for a release of RNS. The Richesins' counsel rejected the offer, taking the position that there were multiple occurrences and therefore the Policy's aggregate limit of $1,000,000 was available.

### A.    The State Litigation

On December 23, 2016, the Richesins filed suit against Travelers and nine other parties—a mixture of individual and entity defendants along with their insurers—in New Mexico state court asserting more than a dozen tort and state statutory claims. As to Travelers, the state court complaint asserted one count for

3

unspecified declaratory judgment regarding the Policy, and one tort count for loss of consortium. Travelers moved to be dismissed on grounds that under long-standing, New Mexico Supreme Court precedent, injured third parties do not—absent limited circumstances—have standing to sue the tortfeasor's insurer: "there is no privity between an injured party and the insurer of the negligent defendant in the absence of a contractual provision or statute or ordinance to the contrary; therefore the injured party has no claim directly against the insurance company." App. Vol. I at 215 (quoting *Raskob v. Sanchez*, 970 P.2d 580, 581 (N.M. 1998)). The state court granted Travelers' motion on October 30, 2017, and dismissed all claims against Travelers with prejudice.

In early 2022, nearly five years after Travelers was dismissed from the state court litigation, the Richesins and RNS entered into a series of agreements under which RNS would (1) direct Travelers to pay the $500,000 per-occurrence Policy limit to the Richesins, (2) stipulate to its liability for the Richesins' injuries and agree to allow the state court to "award legal damages . . . upon an evidentiary hearing," (3) assign its rights under the Policy to the Richesins, and (4) assign to the Richesins "90% of all bad faith and related claims" RNS may have held against any insurer. App. Vol. I at 11–12. In exchange, the Richesins agreed they would not seek satisfaction of any judgment entered in the state court litigation against RNS.

Travelers subsequently paid the Richesins $500,000 subject to a reservation of "all policy defenses." *Id.* at 12.

4

Following the assignment of the Policy to the Richesins—which cured the privity defect that caused Travelers' dismissal from the state litigation in 2017—Travelers moved to intervene for purposes of seeking declaratory judgment on the question of which Policy limit applies. The Richesins opposed intervention, arguing that (1) the motion to intervene was untimely, (2) intervention was "not proper in the instant litigation," and (3) Travelers' intervention would cause them prejudice. App. Vol. II at 308–09. In response to the Richesins' opposition, Travelers withdrew its motion to intervene in the state court litigation.

### B.    The Federal Litigation

On July 22, 2022, less than two weeks after the Richesins filed their opposition to Travelers' intervention in the state court action, Travelers filed a complaint in federal district court asserting a single count against the Richesins and RNS for a judicial declaration "that the accident in which Felicia Richesin was injured is a single occurrence and the [Policy] liability coverage limit for this accident is $500,000." App. Vol. I at 15.

On September 12, 2022, the Richesins moved to dismiss, arguing that (1) the district court should abstain, as a discretionary matter, under the doctrine announced in *Brillhart v. Excess Insurance Company of America.*, 316 U.S. 491 (1942), and (2) the district court was compelled to abstain under *Younger v. Harris*, 401 U.S. 37 (1971).

On January 23, 2023, while the Richesins' motion to dismiss remained pending, Travelers moved for summary judgment on its sole claim for declaratory

5

judgment. Travelers' motion contained a mere five statements of undisputed material facts consisting of excerpts of the Policy and an assertion that the "State Court Complaint arises from a single occurrence." App. Vol. II at 324.

In opposing summary judgment, the Richesins did not dispute any of Travelers' statements of undisputed material facts and offered no argument regarding why Travelers' construction of the Policy was wrong. Instead, the Richesins asserted that the motion for summary judgment was premature and "must be stayed to afford defendants an opportunity to conduct discovery." *Id.* at 339.

On June 22, 2023, the district court denied the Richesins' motion to dismiss, concluding that the *Brillhart* factors weighed in favor of entertaining the action under the Declaratory Judgment Act. The district court did not address the Richesins' argument that abstention was required under *Younger*.

About two weeks later, on July 7, 2023, the district court granted summary judgment to Travelers, declaring that "the February 2, 2016[,] accident in which Felicia Richesin was injured 'is a single occurrence and the [Policy] coverage limit for [that] accident is $500,000.'" App. Vol. II at 377 (third alteration in original) (quoting App. Vol. I at 15). With respect to the Richesins' argument that they needed discovery before opposing summary judgment, the court construed it as a motion

under Federal Rule of Civil Procedure 56(d) and denied it on both procedural and substantive grounds.[1]

## II.    ANALYSIS

On appeal, the Richesins assert (1) the dispute was not ripe for resolution as an Article III justiciability matter, (2) the district court erred by declining to abstain under *Brillhart*, (3) the district court erred by declining to abstain under *Younger*, and (4) the district court erred by denying their Rule 56(d) motion, thereby denying them discovery needed to meaningfully oppose Travelers' motion for summary judgment. We address each assignment of error in turn below.

### A.    Ripeness in the Declaratory Judgment Context

The Declaratory Judgment Act states in pertinent part that

[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.[2]

28 U.S.C. § 2201(a).

The Act's reference to "case[s] of actual controversy," the Supreme Court holds, refers to "Cases" and "Controversies" that are justiciable under Article III of

---

[1] The Richesins did not answer the complaint within the fourteen-day period prescribed by Federal Rule of Civil Procedure 12(a)(4) following the denial of their motion to dismiss.

[2] As the language of 28 U.S.C.§ 2201(a) implies, the Declaratory Judgment Act merely creates the remedy of declaratory relief and does not, on its own, confer subject-matter jurisdiction. Travelers' complaint pleaded diversity jurisdiction under 28 U.S.C. § 1332.

the Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "Article III has long been interpreted as forbidding federal courts from rendering advisory opinions." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011). "It is not the role of federal courts to resolve abstract issues of law." *Id.* "Rather, they are to review disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties." *Id.*

The Supreme Court instructs that courts may exercise their authority to resolve a declaratory judgment action consistent with Article III when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

It is the final portion of the above justiciability test—"sufficient immediacy and reality"—with which the prudential doctrine of ripeness is concerned. That is, ripeness considers timing: whether events have progressed far enough to be sure that declaratory judgment will resolve a live dispute with practical consequences. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). We have distilled Article III's ripeness requirement into a two-factor analysis, examining (1) "the fitness of the issue for review," and (2) "the hardship to the parties" of withholding judicial review. *See Tex. Brine Co., LLC & Occidental Chem. Corp.*, 879 F.3d 1224, 1229–30 (10th Cir. 2018).

8

With respect to the "fitness for review" factor, we consider "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *Id.* at 1229 (emphasis omitted) (quotation marks omitted). And relevant here, the "fitness" inquiry also considers "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all," circumstances which, when present, preclude a finding of ripeness. *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (quoting 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532 at 112). With respect to the "hardship" factor, we consider "whether withholding review will place the parties in 'a direct and immediate dilemma.'" *Tex. Brine Co., LLC*, 879 F.3d at 1230 (quoting *United States v. Bennett*, 823 F.3d 1316, 1327 (10th Cir. 2016)). "Ripeness is a question of law, which we review de novo." *New Mexicans for Bill Richardson*, 64 F.3d at 1499.

The Richesins' principal argument in connection with their ripeness challenge is that the need to resolve the question of which Policy limit applies depends on an uncertain or contingent future event that may or may not occur as anticipated. Specifically, the Richesins argue that the state court's award of damages at some unknown time in the future may or may not exceed $500,000 (the Policy limit that Travelers believes, and the district court concluded based on the unambiguous language of the Policy, applies).[3]

---

[3] The Richesins relatedly argue that the dispute is not ripe because, after the state court awards damages per the agreement between the Richesins and RNS,

We have little trouble concluding Travelers' complaint established Article III jurisdiction. Our precedent is clear that district courts may, consistent with Article III, exercise their authority to resolve insurance coverage disputes via the Declaratory Judgment Act so long as there exists a real controversy between the parties regarding their rights and responsibilities under the relevant policy. Such circumstances are present where "an identifiable[,] specific [insurance] claim has risen above the horizon," even when the "injured party . . . ha[s] [not] sued the insured." *Columbian Fin. Corp.*, 650 F.3d at 1383–84 (collecting cases establishing that insurance coverage disputes are justiciable under the Declaratory Judgment Act even in the absence of underlying tort litigation). The Richesins provide no authority, and we have found none, for the proposition that a suit seeking a judicial declaration of the limits available under a policy is not ripe unless and until judgment in the underlying tort litigation is entered in an amount above the policy limit advocated by the insurer.

---

"Travelers can be joined in the state case and the parties can litigate the coverage issue." Opening Br. at 26. Boiled to its essence, this argument implies that a declaratory judgment action is *never* ripe if the underlying dispute can conceivably be litigated in a future, coercive suit. To state the argument is to refute it; the Declaratory Judgment Act provides the federal courts with a mechanism to resolve the rights and responsibilities of parties *before* a coercive suit, and the attendant time and expense, is initiated. 28 U.S.C. § 2201(a) ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). If the Richesins' preferred conception of ripeness in the declaratory judgment context were countenanced, the Declaratory Judgment Act would be rendered nugatory since most, if not all, issues properly resolved in declaratory judgment actions are capable of being litigated in a future, coercive suit.

The Richesins unambiguously concede they have demanded more from Travelers than $500,000 under the Policy. *See* Oral Argument at 11:17–11:22, *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, No. 23-2113 (10th Cir. March 19, 2024), https://www.ca10.uscourts.gov/sites/ca10/files/oralarguments/23-2113.mp3 (the court: "There's no dispute that your demand from Travelers is more than $500[,000]." Appellants' Counsel: "That is . . . correct."). And Travelers has consistently maintained that the accident was a single occurrence and therefore the Policy limit is $500,000. Thus, there exists a real controversy between the parties.

Travelers' invocation of the Declaratory Judgment Act to conclusively establish its rights and responsibility under the Policy *before* it faced the coercive action the Richesins admit they intend to bring is in the heartland of disputes properly resolved under the Declaratory Judgment Act. We are therefore satisfied that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Md. Cas. Co.*, 312 U.S. at 273). We thus hold that the district court properly exercised jurisdiction over this ripe request for declaratory judgment.

### B.    Brillhart *Abstention*

The Richesins next argue that even if the district court had Article III jurisdiction to hear and resolve this case, it should have nevertheless abstained from hearing the case under *Brillhart*.

11

The *Brillhart* abstention doctrine is potentially implicated whenever a litigant's request for declaratory relief in federal court threatens "[g]ratuitous interference with the orderly and comprehensive disposition of a [parallel] state court litigation." 316 U.S. at 495. "Ordinarily," the *Brillhart* Court opined, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.*

As the Court later characterized the effect of *Brillhart*:

> The question for a district court presented with a suit under the Declaratory Judgment Act, the [*Brillhart*] Court found, is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (quoting *Brillhart*, 316 U.S. at 495).

The Richesins face an exceedingly steep hill in seeking reversal of the district court's decision not to abstain under *Brillhart* owing to an onerous standard of review. "The Supreme Court has long made clear that the Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" *State Farm Fire & Cas Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). This feature of the Declaratory Judgment Act, the Supreme Court instructs, has long "been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. As a result, we accord considerable deference to a district court's determination whether to entertain a declaratory judgment

12

action and review its decision only for a "clear abuse of discretion." *United States v. City of Las Cruces*, 289 F.3d 1170, 1179 (10th Cir. 2002).

"To guide the district courts in the exercise of such substantial discretion," *id.* at 1183, we have adopted several factors to be weighed by a district court when asked to abstain from hearing a declaratory judgment action in favor of parallel state court litigation, directing courts to consider:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (alterations in original) (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

"We give the district court's assessment of each [*Brillhart/Mhoon*] factor great deference," and we do "not reevaluate the district court's assessment of each" factor. *City of Las Cruces*, 289 F.3d at 1179, 1183. Rather, the scope of our review is limited to considering only "whether the court's assessment was so unsatisfactory as to constitute an abuse of discretion." *Id.* at 1179.

The district court faithfully conducted the *Brillhart/Mhoon* exercise, analyzing how each factor applied to the relationship between the federal declaratory action and the purportedly parallel state court litigation and concluding that each factor weighed in favor of exercising its discretion to hear and resolve Travelers' declaratory judgment action. The Richesins have not directed us to any portion of that analysis that contained error, let

alone that the district court's assessment of the *Brillhart/Mhoon* factors "was so unsatisfactory as to constitute an abuse of discretion." *Id.* at 1179. We thus affirm the district court's decision not to abstain under *Brillhart*.

## C.    Younger *Abstention*

"*Younger* provides that a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in 'certain instances in which the prospect of undue interference with state proceedings counsels against federal relief.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669–70 (10th Cir. 2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). As a mandatory abstention doctrine, we review the district court's decision to abstain or decline to abstain under *Younger* de novo. *Weitzel v. Div. of Occupational & Pro. Licensing of Dep't of Com.*, 240 F.3d 871, 875 (10th Cir. 2001).

The Supreme Court has admonished that the "[c]ircumstances fitting within the *Younger* doctrine . . . are 'exceptional.'" *Sprint*, 571 U.S. at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). Indeed, the possibility of *Younger* abstention is triggered *only when* the state proceeding falls into one of the following categories: "(1) state criminal prosecutions, (2) civil enforcement proceedings [that take on a quasi-criminal shape], and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023); *see also Sprint*, 571 U.S. at 79. The Court

has "not applied *Younger* outside these three 'exceptional' categories," which "define *Younger*'s scope." *Sprint*, 571 U.S. at 78.

If and only if the state court proceeding falls within one of the enumerated "exceptional" types of cases, *may* courts analyze the propriety of abstention under the so-called *Middlesex* conditions. Those conditions ask whether there exists "(1) an ongoing state judicial . . . proceeding, (2) the presence of an important state interest, and (3) an adequate opportunity to raise federal claims in the state proceedings." *Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1256 (10th Cir. 2022) (alteration in original) (internal quotation marks omitted).

In *Sprint*, the Supreme Court made clear that the *Middlesex* conditions are "*additional* factors appropriately considered by the federal court before invoking *Younger*," but that those factors do not control the application of *Younger*. *Sprint*, 571 U.S. at 81. This is so because when applied to a case that does not present one of the three "exceptional" state court proceedings, "the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings." *Id.* Therefore, the *sine qua non* of *Younger* abstention is the presence of an "exceptional" state court proceeding, and *Younger* extends "no further." *Id.* at 82. Only after the court determines the case falls within the three categories of exceptional cases do the *Middlesex* factors come into play.

Both before the district court and on appeal, the Richesins ignored the threshold question of whether the state court proceeding qualifies as one of the "exceptional" cases to which *Younger* might apply. In its response brief, Travelers points out this defect, but

15

in reply, the Richesins make no meaningful attempt to situate the state court proceeding within one of the "exceptional" categories. Instead, they merely assert in conclusory fashion that "there is no question that there is an ongoing state court civil proceeding with which Travelers seeks to interfere," and then proceed to argue that the *Middlesex* factors mandate abstention.[4] Reply Br. at 13.

As explained above, the Supreme Court has left no doubt that *Younger* does not apply merely because there exists a parallel or related state court proceeding. *See Sprint*, 571 U.S. at 82 ("[W]e today clarify and affirm that *Younger* extends to the three 'exceptional circumstances' identified [in prior precedent], but no further."). Because the Richesins have wholly failed either before the district court or on appeal to even attempt to explain how the state tort litigation arising from a car accident qualifies as one of the enumerated "exceptional" cases, and further because our own review confirms that it does not, we conclude the district court did not err by declining to abstain under *Younger*.

### D.    Rule 56(d)

Finally, the Richesins complain that the district court erred by denying their Rule 56(d) motion, contending they established their need to take discovery before they could meaningfully oppose summary judgment. Rule 56(d) provides as follows:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

---

[4] The Richesins' *Younger* arguments provide a useful illustration of the *Sprint* Court's concern that, when "[d]ivorced from" an exceptional state court proceeding, "the three *Middlesex* conditions would extend *Younger* to virtually all state and federal proceedings." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2007).

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

"We review . . . the district court's denial of deferment for expanded discovery pursuant to Rule 56(d) . . . for an abuse of discretion." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015) (alterations in original) (internal quotation marks omitted).

In opposing Travelers' motion for summary judgment, the Richesins asserted, as a statement of additional undisputed material fact and based on a supporting affidavit from their counsel, that they were "unable to meaningfully and substantively respond to Plaintiff's Motion because of the following reasons:"

a. The parties have not conducted any written discovery in this case.

b. The parties have not deposed Bijan Malboub, the agent, who issued the policy in question.

c. The parties have not deposed company representatives of Travelers regarding the coverage at issue.

d. There are significant factual issues regarding the coverage that was sought by RNS and coverage that was sold and ultimately bound by Malboub and Travelers.

e. Disposition of these factual issues is critical to the coverage issues raised by Plaintiff in their Complaint and their Motion.

App. Vol. II at 337.

Before the district court, but not on appeal, the Richesins vaguely argued that Mr. Malboub's subjective intent in selling the Policy to RNS could have changed the meaning of the Policy limits: "Whether Mr. Malboub intended to sell $1M in

coverage versus $500,000 remains to be seen and discovered."[5] *Id.* at 340. The Richesins further stated before the district court that they might have "misrepresentation and negligent procurement claims" against Travelers based on the conduct of Mr. Malboub. *Id.* at 341.

The district court concluded the Richesins' request was procedurally improper because they "should have filed their motion for Rule 56(d) discovery before, and not at the same time as, their response to the summary judgment motion." *Id.* at 374. Because the Richesins "responded to the motion for summary judgment and did not dispute the material facts," the district court ruled that it "would therefore exercise its discretion and decline to consider [the Richesins'] Rule 56(d) motion." *Id.* at 375.

But the district court also ruled in the alternative, concluding that it "would deny [the Richesins'] Rule 56(d) request on the merits." *Id.* at 375. In its merits analysis, the district court reasoned that the Richesins had

> not shown how additional time would lead to discovery creating a genuine dispute of material fact, as (1) they have expressly not disputed the material facts in this summary judgment motion, and (2) they seek discovery as to potential future claims which have not been asserted in this case or any other.

---

[5] Presumably, the Richesins meant to argue not that Mr. Malboub's subjective intent could have changed the terms of the Policy, but rather that statements he made to RNS when selling the Policy may have altered its terms or supplied new ones. We pause to note that the Policy, like virtually all modern contracts, contains language conclusively foreclosing any contract claims based on an alleged breach of a term not contained within the written agreement. *See* App. Vol. I at 82 ("This policy contains *all* the agreements between you and us . . . ." (emphasis added)).

18

*Id.* at 376. The district court also questioned the Richesins' avowed intent to bring additional claims in light of their failure to file an answer to the complaint at all, let alone an answer asserting the counterclaims of "misrepresentation and negligent procurement." *Id.* at 341.

We discern no error, let alone an abuse of discretion, in the district court's denial of the Rule 56(d) motion. The Richesins did not dispute any of Travelers' material facts, and those facts entitled Travelers to summary judgment. The discovery sought by the Richesins was incapable of altering the summary judgment analysis, and the district court properly concluded as much.

## III.    CONCLUSION

For the reasons articulated, we AFFIRM the district court in full.