**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 7 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Counter-
        Defendant-Appellant,

v.

CITY OF LAS CRUCES; HUDSPETH
COUNTY CONSERVATION AND
RECLAMATION DISTRICT NO. 1;
CITY OF EL PASO; NEW MEXICO
STATE UNIVERSITY; STAHMANN
FARMS, a New Mexico corporation;
STATE OF NEW MEXICO, ex rel.
STATE ENGINEER,

        Defendants-Appellees,

EL PASO COUNTY WATER
IMPROVEMENT DISTRICT NO. 1,

        Defendant-Counter-
        Claimant-Cross-
        Claimant,

v.

ELEPHANT BUTTE IRRIGATION
DISTRICT OF NEW MEXICO,

        Defendant-Cross-
        Defendant-Appellee.

--------------------------------

No. 00-2451

STATE OF TEXAS; LOWER
VALLEY WATER DISTRICT;
PUEBLO OF ISLETA DEL SUR;
STATE OF COLORADO; JAMES
SCOTT BOYD, Administrator of the
Estate of Nathan Ellington Boyd,

       Intervenors.

--------------------------------

UNITED STATES OF AMERICA,

       Plaintiff-Counter-
       Defendant,

v.                                  No. 00-2459

CITY OF LAS CRUCES; HUDSPETH
COUNTY CONSERVATION AND
RECLAMATION DISTRICT NO. 1;
NEW MEXICO STATE
UNIVERSITY; STAHMANN FARMS,
a New Mexico corporation; STATE
OF NEW MEXICO, ex rel. STATE
ENGINEER,

       Defendants-Appellees,

EL PASO COUNTY WATER
IMPROVEMENT DISTRICT NO. 1,

       Defendant-Counter-
       Claimant-Cross-
       Claimant,

and

CITY OF EL PASO,

        Defendant-Appellant,

v.

ELEPHANT BUTTE IRRIGATION
DISTRICT OF NEW MEXICO,

        Defendant-Cross-
        Defendant-Appellee.

--------------------------------

STATE OF TEXAS; LOWER
VALLEY WATER; PUEBLO OF
ISLETA DEL SUR; STATE OF
COLORADO; JAMES SCOTT BOYD,
Administrator of the Estate of Nathan
Ellington Boyd,

        Intervenors.

--------------------------------

UNITED STATES OF AMERICA,

        Plaintiff-Counter-
        Defendant,

v.                                                              No. 00-2473

CITY OF LAS CRUCES; HUDSPETH
COUNTY CONSERVATION AND
RECLAMATION DISTRICT NO. 1;
CITY OF EL PASO; NEW MEXICO
STATE UNIVERSITY; STAHMANN
FARMS, a New Mexico corporation;

-3-

STATE OF NEW MEXICO, ex rel.
STATE ENGINEER,

        Defendants-Appellees,
and

EL PASO COUNTY WATER
IMPROVEMENT DISTRICT NO. 1,

        Defendant-Counter-
        Claimant-Cross-
        Claimant-Appellant,

v.

ELEPHANT BUTTE IRRIGATION
DISTRICT OF NEW MEXICO,

        Defendant-Cross-
        Defendant-Appellee.

-------------------------------

STATE OF TEXAS; LOWER
VALLEY WATER; PUEBLO OF
ISLETA DEL SUR; STATE OF
COLORADO; JAMES SCOTT BOYD,
Administrator of the Estate of Nathan
Ellington Boyd,

        Intervenors.

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-97-803-JP/RLP)**

-4-

Andrew C. Mergen, Attorney, U.S. Department of Justice, Washington, D.C., (John Cruden, Acting Assistant Attorney General, Washington, D.C.; Jeffrey Dobbins, Attorney, U.S. Department of Justice, Washington, D.C.; Lynn Johnson, Attorney, U.S. Department of Justice, Washington, D.C.; John W. Zavitz, Assistant U.S. Attorney, Albuquerque, New Mexico; Chris Rich, U.S. Department of the Interior, Salt Lake City, Utah; with him on the briefs), for Plaintiff-Counter-Defendant-Appellant.

Jay F. Stein, James C. Brockmann, Stein & Brockmann, P.A., Santa Fe, New Mexico, on the briefs for Defendant-Appellee City of Las Cruces.

Benjamin Phillips, Rebecca Dempsey, White, Koch, Kelly & McCarthy, P.A., Santa Fe, New Mexico; Douglas G. Caroom, Delgado, Acosta & Bickerstaff, Heath, P.L.L.C., on the briefs for Defendant-Appellee City of El Paso.

Luis G. Stelzner, John W. Utton, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, New Mexico; Charles T. DuMars, Christina Bruff DuMars, Law & Resource Planning Assoc., Albuquerque, New Mexico, on the briefs for Defendant-Appellee New Mexico State University.

Joel T. Newton, Miller, Stratvert & Torgerson, P.A., Las Cruces, New Mexico, on the briefs for Defendant-Appellee Stahmann Farms.

Susanne Hoffman-Dooley, (Gregory C. Ridgley, with her on the briefs), Santa Fe, New Mexico, for Defendant-Appellee State of New Mexico, ex rel. State Engineer.

James M. Speer, Jr., El Paso, Texas, for Defendant-Counter-Claimant-Cross-Claimant-Appellant El Paso County Water Improvement District No. 1.

Beverly J. Singleman, Stephen A. Hubert, Las Cruces, New Mexico, on the briefs for Defendant-Cross-Defendant-Appellee Elephant Butte Irrigation District of New Mexico.

---

Before **BRISCOE**, **MURPHY**, Circuit Judges, and **OBERDORFER**, District Judge[*].

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

This is an appeal from the district court's order dismissing the United States' suit to quiet title to water rights in a portion of the Rio Grande River. The district court dismissed the suit under the *Colorado River* doctrine and, in the alternative, under the *Brillhart* doctrine. This court has jurisdiction under 28 U.S.C. § 1291 and holds that the district court did not abuse its discretion when it refused to exercise jurisdiction over the federal action pursuant to *Brillhart*. The district court, however, did not articulate why it decided to dismiss the action rather than stay it. For that reason alone, we **vacate** and **remand**, with instructions to consider the propriety of a stay.

## II. FACTS

### A. Background

This dispute centers around the Rio Grande Reclamation Project (the "Project"). In 1902, Congress passed the Reclamation Act. Act of June 17, 1902,

---

[*]Honorable Louis F. Oberdorfer, United States District Judge, United States District Court for the District of Columbia, sitting by designation.

ch. 1093, 32 Stat. 388 (1902) (codified as amended in scattered sections of 43 U.S.C. beginning at 43 U.S.C. § 371). The purpose of the Reclamation Act was to facilitate irrigation of arid and semi-arid western territories and states by providing for the construction of large-scale irrigation works. *See Henkel v. United States*, 237 U.S. 43, 49 (1915). The Project is one that grew out of the Act. It is expansive, running through New Mexico and Texas. The Project begins in the north at Elephant Butte Reservoir, near the town of Truth or Consequences, New Mexico. Just below Elephant Butte Reservoir is Caballo Reservoir. From the reservoirs, water is released into the Rio Grande riverbed. The water is then diverted by one of six diversion dams into canals running on either side of the river. From the canals, riverwater is further diverted into channels and ditches running to farmland. The water is used to irrigate crops. Other channels and ditches return both run-off from the farmland and groundwater back to the Rio Grande. The process is repeated several times over the length of the Project to irrigate land in both southeastern New Mexico and western Texas.

Irrigation in the United States is not the sole use of Project water. The river runs through or near several towns and cities. At least one, El Paso, Texas, uses Project water to supplement its municipal water system. Project water is also used outside of the United States. Pursuant to a 1906 treaty with Mexico, the federal government is obligated to provide 60,000 acre-feet of water a year to

Mexico.[1]  *See* Convention Between the United States and Mexico Providing for the Equitable Distribution of the Waters of the Rio Grande for Irrigation Purposes, May 21, 1906, U.S.-Mex., 34 Stat. 2953 [hereinafter 1906 Treaty].  To fulfill its treaty obligations, the United States diverts Project water from the Rio Grande to Mexico at the International Diversion Dam, which is located approximately two miles northwest of El Paso.

Several legal regimes govern the use of Project water.  The Rio Grande Compact is an agreement entered into by the states of Colorado, New Mexico, and Texas and ratified by the United States Congress in 1939.  *See* Rio Grande Compact, 53 Stat. 785 (1939); *reprinted at* N.M. Stat. Ann. § 72-15-23 (1978).  The Compact is an attempt to equitably apportion Rio Grande water among the three states.  *See id.* pmbl.

State law governs the United States' acquisition of water rights.  Federal reclamation law provides that the United States must act in accordance with state law to acquire title to water used in reclamation projects.[2]  *See* Reclamation Act § 8, 32 Stat. 390 (codified in part at 43 U.S.C. § 383); *see also California v. United*

---

[1] An acre-foot is the volume of water needed to cover one acre of land to a depth of one foot.  Webster's Third New International Dictionary 19 (1993).

[2] The federal government may also acquire water rights by impliedly reserving water necessary to give effect to a federal land reservation.  *See Arizona v. California*, 373 U.S. 546, 597-98, 600 (1963).  The United States does not argue that it so reserved the water rights that are the subject of its federal lawsuit.

*States*, 438 U.S. 645, 665 (1978). The United States asserts in its complaint that it acquired title to all Project water by filing notices with the New Mexico Territorial Engineer in 1906 and again in 1908. *Cf.* N.M. Stat. Ann. § 72-5-1 (1978) (requiring any entity, including the United States, who intends to appropriate surface water to first apply for a permit from the State Engineer).

State law also governs the rights of individual water users in both New Mexico and Texas. In New Mexico, state law provides for a hierarchy of water users along a river such as the Rio Grande. Those who first appropriate water for beneficial use have rights superior to those who appropriate water later. *See* N.M. Const. art. XVI, § 2; *Snow v. Abalos*, 140 P. 1044, 1048 (N.M. 1914) (affirming that New Mexico follows the "prior appropriation" doctrine ). In years of drought or when the water level is otherwise low, those with priority use their appropriation as they wish; those with inferior rights may be left without. *See* Norman K. Johnson & Charles T. DuMars*, A Survey of the Evolution of Western Water Law in Response to Changing Economic and Public Interest Demands*, 29 Nat. Resources J. 347, 350 (1989) (describing the "first in time is first in right" characteristic of prior appropriation doctrine).

The hierarchy is established through a state proceeding called a "stream adjudication." *See generally* N.M. Stat. Ann. §§ 72-4-15 to -19 (1978). The State Engineer first prepares a hydrographic survey of the disputed stream. *See* N.M.

Stat. Ann. §§ 72-4-13, -15, -17 (1978). Following completion of a portion of the survey, all water claimants in that portion are joined in the adjudication. Each claimant is served with a summons and complaint, to which an "offer of judgment" is attached. The offer consists of an amount of water that the offeree, a defendant in the litigation, will be entitled to use in a set time period; a priority date to determine where in the hierarchy the offeree stands; and other locational information. Those rejecting offers are given an opportunity to mediate or adjudicate their claims.

Texas has statutorily adopted a prior appropriation scheme. *See* Tex. Water Code Ann. §§ 11.022-.027 (Vernon, WESTLAW through 2001 Reg. Sess.); *State v. Hidalgo County Water Control & Improvement Dist. No. 18*, 443 S.W.2d 728, 737-38 (Tex. Civ. App. 1969). The "first in time is first in right" principle is expressly included in its Water Code. *See* Tex. Water Code Ann. § 11.027 (Vernon, WESTLAW through 2001 Reg. Sess.). With limited exceptions, not applicable here, to appropriate surface water, an individual must first receive a permit from the Texas Natural Resource Conservation Commission (TNRCC). *See id.* §§ 11.121, .142. Water rights are adjudicated by the TNRCC, if it first determines that an adjudication would serve the public interest. See *id.* §§ 11.304-.305.

Generally, the water rights of the federal government are also adjudicated in state proceedings such as a stream adjudication. The McCarran Amendment, codified at 43 U.S.C. § 666,[3] articulates the policy of the federal government to make state courts the primary forum for water rights adjudications. The amendment waives the United States' sovereign immunity in certain state water cases. *See* 43 U.S.C. § 666.

## B. Procedural History

1. The New Mexico Stream Adjudication

In 1986, Elephant Butte Irrigation District (EBID) filed a complaint in New Mexico state court against the New Mexico State Engineer, the United States, the City of El Paso, and all known and unknown claimants to water rights in the Rio

---

[3] (a) Joinder of United States as defendant; costs

Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided*, That no judgment for costs shall be entered against the United States in any such suit.

Grande from Elephant Butte Dam to the Texas state line.  EBID claimed a right to appropriate water superior to all defendants.  The complaint sought, among other things, a New Mexico stream adjudication and an injunction preventing the State Engineer from allowing appropriation of Rio Grande water until completion of the stream adjudication.

The procedural history of the New Mexico proceeding is complex but a summary is helpful.  Numerous parties attempted to dismiss the case, including the United States and the New Mexico State Engineer.  The United States' three motions to dismiss all asserted that it had not waived sovereign immunity under the McCarran Amendment because the scope of the lower Rio Grande stream adjudication, from Elephant Butte Dam to the Texas state line, did not constitute a "river system." *See Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ.*, 849 P.2d 372, 374 (N.M. Ct. App. 1993).  All of the motions were denied. *See id*.  The United States also supported the City of El Paso's attempt to remove the case to federal district court in New Mexico.  In 1989, however, the district court remanded the case back to state court.

The New Mexico State Engineer also sought to escape the stream adjudication.  He filed a motion to dismiss based on venue grounds. *See id.*  The New Mexico state district court granted the motion, but the New Mexico Court of Appeals reversed. *See id.* at 381.  The State Engineer then filed another motion to

-12-

dismiss, arguing, among other things, that the state court did not have personal jurisdiction over Project water users in Texas who were indispensable parties. The state court denied the motion on April 2, 1997. The State Engineer then ceased contesting the stream adjudication, was realigned as a plaintiff,[4] commenced the hydrographic surveys required by N.M. Stat. Ann. § 72-4-17, and filed a fourth amended complaint.

Meanwhile, an interested Texas party, the El Paso County Water Improvement District No. 1 ("El Paso Water District") moved to intervene in the stream adjudication.[5] Its motion was opposed by several of the New Mexico parties. The state court granted El Paso Water District leave to participate as amicus curiae, holding its motion to intervene in abeyance.

Organized into surveys of five regions, the hydrographic surveys proceeded quickly. Nutt-Hockett Basin was completed in 1998, and the survey of the Rincon section was completed in 1999. As of early 2000, virtually all of the claims in the Nut-Hockett Basin had been adjudicated, and over one-third of the offers of judgment in the Rincon section had been served. The survey of two more regions, Northern and Southern Mesilla Valley, were expected to be completed in 2000,

---

[4] Pursuant to a stipulated order, the State Engineer was removed as an individual defendant and was added as a plaintiff acting on behalf of the State of New Mexico.

[5] The City of El Paso has been a named defendant since the initiation of the lawsuit.

while the fifth, the "Outlying Areas," was expected to be completed near the end of 2000. The Appellees report in their appellate brief that the State Engineer has now filed with the state court survey reports and maps for all five regions.

2. The Texas Natural Resources Conservation Commission Proceeding

There is little in the record indicating the progress or scope of the Texas proceeding. The adjudication started upon the April 21, 1994 request of the El Paso Water District. Pursuant to Texas Water Code §§ 11.304-.305, the TNRCC ordered an adjudication of the Rio Grande from the New Mexico border to Fort Quitman, Texas (corresponding to the extent of the Project within Texas). On April 22, 1996 the United States filed claims pursuant to Texas Water Code § 11.307. It asserted rights to 27,000 acre-feet/year to which TNRCC previously issued a permit to Hudspeth County Conservation and Reclamation District No. 1; 70,000 acre-feet/year to which TNRCC previously issued a permit to El Paso Water District; and 315,548 acre-feet/year, which the Bureau of Reclamation transports from New Mexico into Texas. The progress of the adjudication beyond this single claim form filed by the United States is not clear from the record.

3. The Federal Proceeding

Shortly following the denial of its third attempt to dismiss the New Mexico stream adjudication, the United States filed this federal civil action in the District Court for the District of New Mexico. The United States sued to quiet its title to

-14-

Project water. The alleged jurisdictional bases were 28 U.S.C. § 1345, United States as a plaintiff; 28 U.S.C. § 1341, federal question; and 28 U.S.C. §§ 2201-2202, declaratory judgment action. The United States asserted that the named defendants had clouded its title to Project water.[6] In particular, the United States alleged that EBID asserted title to Project water because it finished paying off its debt to the United States for construction of irrigation works; that El Paso Water District asserted title to the Project water it received by means of its TNRCC permit; and that Hudspeth County Conservation and Reclamation District No. 1 asserted title to Project water, again, as evidenced by a permit it held from the TNRCC.

The district court dismissed the United States' suit. It applied the "abstention" doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The court determined that this case presented the exceptional circumstances required for dismissal under *Colorado River*. According to the district court, the United States' quiet title action was very similar to other cases in which *Colorado River* dismissal was appropriate. The court stated, "It is a conspicuous fact that [those] cases, like this one, were water

---

[6] The defendants named in the complaint were EBID, El Paso Water District, the City of El Paso, Hudspeth County Conservation and Reclamation District No. 1, New Mexico State University, Stahmann Farms, Inc., and the State of New Mexico *ex rel.* State Engineer.

law cases involving McCarran Amendment considerations." Dist. Ct. Opinion at 21.

The district court dismissed the United States' complaint on the alternative ground that it had discretion under *Brillhart v. Excess Insurance Co. of America* to dismiss a declaratory judgment action. *See Brillhart*, 316 U.S. 491 (1942). The district court weighed the five factors enunciated by this court in *State Farm Fire & Casualty Co. v. Mhoon,* 31 F.3d 979 (10th Cir. 1994). Finding that all five factors weighed against the exercise of jurisdiction, the district court determined that it should not entertain the suit. Dist. Ct. Opinion at 23-26.[7]

## III. STANDARD OF REVIEW

The district court's decision to decline jurisdiction over a declaratory judgment action will not be overturned absent a clear abuse of discretion. *See ARW Exploration Corp. v. Aguirre*, 947 F.2d 450, 453-54 (10th Cir. 1991); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995). On review, this court should not reevaluate the district court's assessment of each of the *Brillhart/Mhoon* factors, but only resolve whether the court's assessment was so unsatisfactory as to constitute an abuse of discretion. *See Mhoon*, 31 F.3d at 983.

---

[7] The court also dismissed on venue grounds El Paso Water District's counterclaim against the United States and cross-claim against EBID, unless the Water District timely applied for a transfer to federal district court in Texas. *See* 43 U.S.C. § 390uu. It is not clear from the record whether the Water District did so.

**IV. DISCUSSION**

The Supreme Court held in *Wilton v. Seven Falls Co.* that district courts have "unique and substantial discretion" in determining whether to declare the rights of litigants when duplicative state proceedings exist. 515 U.S. at 286-87. This discretion is conferred upon the district courts by the Declaratory Judgment Act. *See id.* ("On its face, the statute provides that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration.'"(quoting 28 U.S.C. § 2201(a))). The Court thereby reaffirmed the holding of *Brillhart v. Excess Insurance Co. of America* that district courts are "under no compulsion" to grant declaratory relief but have discretion to do so. *See Brillhart*, 316 U.S. at 494-95.

The appellants' argument regarding the district court's *Brillhart* holding is twofold: first, it was error even to apply *Brillhart*; second, the district court's analysis of the *Brillhart/Mhoon* factors was an abuse of discretion. This court holds that the district court properly applied *Brillhart* and that it did not abuse its discretion. We further hold, however, that on remand the district court should consider whether a stay is the preferable remedy. We do not reach the propriety of a stay pursuant to the more exacting standard of *Colorado River*.[8]

---

[8] In *Colorado River Water Conservation District v. United States*, the Court held that dismissal or stay of a federal suit in favor of a concurrent state proceeding should be granted only in exceptional circumstances. *See* 424 U.S.

-17-

## A. Whether *Brillhart* Applies

1. Applicability of *Brillhart* to suits brought under 28 U.S.C. § 1345

Under *Wilton* and this circuit's case law, a district court has discretion to withhold its exercise of jurisdiction over "declaratory judgment actions." *See Wilton,* 515 U.S. at 289-90; *Mhoon*, 31 F.3d at 982-83. The United States and Texas parties argue that the federal action in this case is not a declaratory judgment action but rather a quiet title action. They do not dispute that the United States' complaint prays only for declaratory relief. They argue, however, that because the district court had subject matter jurisdiction under 28 U.S.C. § 1345 (United States as a plaintiff), a jurisdictional basis independent from the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the action is not a declaratory judgment action. We disagree.

---

800, 818 (1976). As in *Colorado River*, the United States in this case is seeking only a declaration of water rights and jurisdiction is based on 28 U.S.C. § 1345. *See id.* at 806-09. *Colorado River* does not, however, stand for the proposition that the narrow abstention doctrine announced in that case is the *only* basis upon which district courts may refuse jurisdiction in § 1345 suits seeking declaratory relief. *Colorado River* did not discuss the propriety of a *Brillhart* analysis in such suits because the district court did not invoke its discretion under the Declaratory Judgment Act, and the issue was thus not presented to the Court. *See United States v. Akin*, 504 F.2d 115, 117 (10th Cir. 1974) (noting that district court abstained on "comity" grounds), *rev'd*, *Colorado River*, 424 U.S. 800 (1976); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (noting *Colorado River* was not a case "brought under" the Declaratory Judgment Act). The Supreme Court subsequently has made clear that *Colorado River* does not supplant the *Brillhart* analysis when applicable. *See Wilton*, 515 U.S. at 286. For the reasons stated in Section IV.A., *infra*, we hold *Brillhart* does apply in this case.

Whether a district court has discretion to entertain a suit for declaratory judgment does not depend solely on the jurisdictional basis of the suit. As the Supreme Court stated in *Wilton*, "district courts possess discretion in determining whether . . . to entertain an action under the Declaratory Judgment Act, *even when the suit otherwise satisfies subject matter jurisdictional prerequisites.*" 515 U.S. at 282 (emphasis added). This is because the Declaratory Judgment Act itself is "an enabling Act, which confers a discretion on the courts," regardless of the jurisdictional bases upon which the suit is brought. *Id.* at 287 (quotation omitted); *see also Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997). Thus, in both *Wilton* and *Brillhart*, the seminal cases dealing with discretion to dismiss or stay "declaratory judgment actions," the Supreme Court held the district court had discretion to abstain even though an independent jurisdictional basis for the suit, diversity of citizenship, existed. *See Wilton*, 515 U.S. at 280, 290; *Brillhart*, 316 U.S. at 493, 494-95.

Other courts have applied the *Brillhart* rule when subject matter jurisdiction was premised on grounds other than diversity. In *Odeco Oil & Gas Co. v. Bonnette*, the Fifth Circuit held that the district court did not abuse its discretion in dismissing a suit for declaratory relief brought under admiralty jurisdiction. *See* 4 F.3d 401, 403 n.2, 404 (5th Cir. 1993). Some courts have held that district courts have discretion to refuse to entertain suits involving a federal

-19-

question if the relief requested is declaratory in nature. *See, e.g., Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995) (finding no abuse of discretion in district court's refusal to exercise jurisdiction over suit asserting that ERISA preempted state insurance licensing requirement); *Dr. Beck & Co. G.M.B.H. v. Gen'l Elec. Co.*, 317 F.2d 538, 539 (2d Cir. 1963) (patent infringement); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2761 (3d ed. 1998). *But see Wilton*, 515 U.S. at 290 (describing a case raising issues of federal law as one which lies on the "outer boundaries" of *Brillhart* discretion). Additionally, the Second and Third Circuits have held that a district court with jurisdiction pursuant to the federal interpleader statute had discretion under *Brillhart* to dismiss claims for declaratory relief. *See Karp*, 108 F.3d at 21; *NYLife Distribs., Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 372 (3d Cir. 1995).[9]

The nature of the relief requested by the plaintiff, not the jurisdictional basis of the suit, is the touchstone. In *Sinclair Oil Corp. v. Amoco Production Co.*, this court drew a distinction between suits seeking declaratory relief and those seeking coercive relief: "The Federal Declaratory Judgments Act authorizes, but does not compel, federal jurisdiction over suits seeking *declaratory relief*.

---

[9] This court has observed that "a general water adjudication is comparable to interpleader." *New Mexico ex rel. Reynolds v. Molybdenum Corp. of Am.*, 570 F.2d 1364, 1366 (10th Cir. 1978).

Thus, *unlike coercive actions*, declaratory actions do not invoke the federal judiciary's 'virtually unflagging obligation' to exercise its jurisdiction."  982 F.2d 437, 440 (10th Cir. 1992) (emphasis added) (footnote and citation omitted).  If the plaintiff only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit.  *See Safety Nat'l Cas. Corp. v. Bristol-Meyers Squibb Co.*, 214 F.3d 562, 564 (5th Cir. 2000) (holding that in a suit seeking coercive relief as well as declaratory relief, broad *Brillhart* standard inappropriate).  Because the United States requested only declaratory relief,[10] the federal action in this case is a declaratory judgment action.[11]

---

[10] The United States argues that it also prayed for all relief "as may be necessary and proper."  This court rejects the contention that a boilerplate prayer for "necessary and proper relief" converts a declaratory judgment action into some other type of lawsuit.  *Cf. Frazier v. Simmons*, 254 F.3d 1247, 1254 (10th Cir. 2001) (cautioning practitioners that a "boilerplate recitation" of for "just and equitable relief" was "far from an exemplary request" for prospective injunctive relief necessary to invoke *Ex parte Young*, 209 U.S. 123 (1908)); *Rosen v. Cascade Int'l , Inc.,* 21 F.3d 1520, 1526 n.12 (11th Cir. 1994) (holding that appellees failed to invoke district court's equitable jurisdiction in securities fraud case by praying for any "just and proper" relief in addition to the damages requested).

[11] The United States argues that its suit is a quiet title action and that this court has previously decided that a quiet title action can never be a declaratory judgment action.  *See Rosette, Inc. v. United States*, 141 F.3d 1394 (10th Cir. 1998).  *Rosette* dealt with a suit against the United States in which the plaintiff sought to quiet its title to geothermal resources.  *See id.* at 1396.  The plaintiff asserted jurisdiction under both the Declaratory Judgment Act and the Quiet Title

-21-

2.    Applicability of *Brillhart* when the state and federal proceedings are not perfectly parallel

The appellants also argue that *Brillhart* does not apply unless there is an identity of parties and issues in the state and federal actions.  Because the United States' rights in Elephant Butte Reservoir are not at issue in the New Mexico proceeding and the Texas parties are not parties to the New Mexico stream adjudication, they assert the proceedings are not parallel.

The circuit has addressed this issue with respect to *Colorado River* abstention and decided that a finding of parallel proceedings is a threshold condition for engaging in the *Colorado River* analysis.  *See Fox v. Maulding*, 16

---

Act, 28 U.S.C. § 2409a.  *See id.*  This court held that even though the plaintiff sought declaratory relief, the suit was one to establish ownership and therefore was a quiet title action subject to the statute of limitations contained in the Quiet Title Act.  *Id.*

       *Rosette* is distinguishable.  First, the plaintiff in *Rosette* sought injunctive as well as declaratory relief.  *See id.* (noting that plaintiff sought to enjoin the United States from asserting authority over geothermal resources).  Second, the Quiet Title Act applied.  Because the Supreme Court had previously observed that "'Congress intended the [Act] to provide the exclusive means by which adverse claimants could challenge the United States' title to real property,'" this court concluded that the "Quiet Title Act . . . is [the] only recourse for haling the United States into court on the issue of ownership."  *Id.* at 1397 (quoting *Block v. North Dakota ex rel. Bd. of Univ.*, 461 U.S. 273, 286 (1983)).  To allow the plaintiff to maintain a declaratory judgment action "would render the Quiet Title Act's statute of limitations meaningless."  *Id.*  Because the United States brought the instant suit, seeks nothing but declaratory relief, and the congressional intent behind the Quiet Title Act is not subverted by deeming this suit a declaratory judgment action, this quiet title action is a declaratory judgment action for purposes of *Brillhart/Mhoon*.

F.3d 1079, 1081 (10th Cir. 1994).  Even in the *Colorado River* context, however, exact identity of parties and issues is not required.  Rather, state and federal proceedings are sufficiently parallel if "substantially the same parties litigate substantially the same issues."  *Id.* (quotation omitted).   This court has not declared previously what level of similarity is required before a district court may engage in the *Brillhart* analysis.  We now hold the degree of similarity should be considered in the evaluation of the *Brillhart/Mhoon* factors, rather than considered as a threshold condition.

The *Brillhart* analysis differs fundamentally from the *Colorado River* analysis.  Because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," a district court should decline jurisdiction under *Colorado River* only in "exceptional" circumstances.  *Colorado River*, 424 U.S. at 817-18.  Requiring district courts to first determine whether the federal and state proceedings are parallel before considering the other *Colorado River* factors is consistent with the narrowness of the doctrine.  *Brillhart*, however, gives district courts a freer hand.  The Declaratory Judgment Act, the backbone of the *Brillhart* doctrine, confers upon district courts "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton*, 515 U.S. at 286; *see also* 28 U.S.C. § 2201(a).  To guide the district courts in the exercise of such substantial discretion, this court articulated in *Mhoon* several factors to

-23-

weigh. *See* 31 F.3d at 983. We give the district court's assessment of each factor great deference. *See id.* ("[This court] will only ask whether the trial court's assessment of [the factors] was so unsatisfactory as to amount to an abuse of discretion."). Requiring evaluation of the parallel nature of the proceedings prior to the *Brillhart/Mhoon* analysis would shortcircuit the district court's weighing of these factors and would thus unnecessarily limit the district court's broad discretion.

Moreover, the *Mhoon* factors clearly encompass inquiry into the proceedings' similarity. The five factors include "[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue." *Id.* These two factors are necessarily driven by the degree of identity of parties and issues in the concurrent proceedings. Without some degree of similarity between the proceedings, a federal declaratory judgment will likely not settle the controversy between the parties, nor would it clarify all the legal relations at issue. These remain, however, only factors in the analysis; they are not determinative. *See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) ("Clearly, the existence of [a parallel] proceeding should be a significant factor in the district court's determination. But it is not dispositive."); *Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1016 (9th Cir. 1995) ("[O]ur precedent and Supreme

-24-

Court decisions clearly indicate that a number of additional factors must be considered [in addition to the identity of issues and parties].”), *overruled on other grounds, Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc).

Tenth Circuit precedent is not to the contrary. In *ARW Exploration Corp. v. Aguirre*, this court deemed the district court's dismissal of a declaratory judgment action an abuse of discretion because there was no pending state proceeding whatsoever. *See* 947 F.2d at 454; *see also Fed. Reserve Bank v. Thomas*, 220 F.3d 1234, 1247 (11th Cir. 2000) (“It is an abuse of discretion . . . to dismiss a declaratory judgment action in favor of a state proceeding that does not exist.”). *But see Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 525-26 (6th Cir. 2001) (applying abuse of discretion standard when no parallel proceeding existed). We recognized that the state proceeding could not provide an adequate remedy because it had been dismissed without adjudicating the questions at issue in the federal action. *See Aguirre*, 947 F.2d at 454-55. Accordingly, the federal declaratory action would serve some useful purpose. *See id.* Rather than dictate that the parallel nature of the proceedings be considered in a preliminary step, *Aguirre* firmly places the similarity of the proceedings in the process of balancing the *Brillhart/Mhoon* factors. *See Mhoon*, 31 F.3d at 983 (listing as factors “[2] whether [the

-25-

declaratory judgment action] would serve a useful purpose" and "[5] whether there is an alternative remedy which is better or more effective").

### 3. The existence of a federal question

In *Brillhart*, the Supreme Court cast some doubt on whether a district court has discretion to decline jurisdiction over a declaratory judgment action presenting a federal question. The Court observed, "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit . . . *not governed by federal law*." 316 U.S. at 495 (emphasis added). In *Wilton*, the Court specifically reserved the question of whether the presence of a federal question deprives a district court of discretion to refuse jurisdiction. 515 U.S. at 290 ("We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law."). This court need not decide whether the presence of a federal question renders the exercise of *Brillhart* discretion inappropriate because appellants have not demonstrated that issues of federal law will arise in the federal action.

The United States and Texas parties contend that the federal action implicates three sources of federal law: (1) Section 8 of the Reclamation Act; (2) the interstate and international obligations contained in the Rio Grande Compact and the 1906 treaty with Mexico; and (3) the contracts between the United States

-26-

and the New Mexico and Texas parties.

   *a. Section 8 of the Reclamation Act*

The United States first argues that in Section 8 of the Reclamation Act, "Congress was careful to reserve authority over interstate streams." Section 8 provides that though the federal government must honor state law when it appropriates water for Reclamation projects, "nothing herein shall in any way affect any right of . . . the Federal Government . . . in, to, or from any interstate stream or the waters thereof." Reclamation Act, § 8, 32 Stat. 390 (codified at 43 U.S.C. § 383). Section 8 does not create an issue of federal law in the United States' federal suit. Rather, the interstate stream provision of Section 8 was intended to make clear that the Reclamation Act should not be construed to affect a then-pending equitable apportionment dispute between two states in the Supreme Court. *See Wyoming v. Colorado*, 259 U.S. 419, 463 (1922); *see also Arizona v. California*, 373 U.S. 546, 623 (1963) (holding that Congress intended "to leave untouched the law of interstate equitable apportionment" with interstate portion of Section 8). The United States and Texas parties cite to no authority for the proposition that interstate streams are exempted from the rest of Section 8, which requires the federal government to comply with state law in the acquisition and distribution of water to the extent such law is "not inconsistent with

-27-

congressional provisions authorizing the project in question."[12]  *See California v. United States*, 438 U.S. at 665, 674.  Indeed, this court has held otherwise.  *See Jicarilla Apache Tribe v. United States*, 657 F.2d 1126, 1144 (10th Cir. 1981) (holding United States must comply with state law in distribution of water from the Navajo River, an interstate stream).  Because the instant federal action does not involve an interstate equitable apportionment dispute, the interstate portion of Section 8 is not relevant.

> b.      *Interstate and international obligations imposed by the Rio Grande Compact and the 1906 Treaty with Mexico*

The Rio Grande Compact was joined by the states of Colorado, New Mexico, and Texas for the purpose of equitably apportioning water between the three states.  *See* Rio Grande Compact pmbl., *reprinted at* N.M. Stat. Ann. § 72-15-23 (1978).  To that end, the Compact contains tables outlining the delivery obligations of each state to the next downstream state.  In Article IV, New Mexico is obligated to deliver a quantity of water to Texas every year as determined by a table.  The 1906 Treaty with Mexico obligates the United States to deliver 60,000 acre-feet of water every year to Mexico.  *See* 1906 Treaty, 34 Stat. 2953.

---

[12] Appellants do not argue that New Mexico and Texas law conflict with the congressional authorization of the Project.

Because Congress consented to its creation, the Compact is federal law. *See New Jersey v. New York*, 523 U.S. 767, 811 (1998). Likewise, interpretation of international treaties raises questions of federal law. *See Air Fr. v. Saks*, 470 U.S. 392, 396 (1985). Because, however, neither the Rio Grande Compact nor the 1906 Treaty will be consulted in the federal action, no issues of federal law arise.

The Treaty and the Compact do obligate delivery of water, but the appellants have not referenced any language in either that purports to create water rights in any of the signatory parties. Even reading the obligation to deliver water as giving the water recipient a right to the water, those water rights are irrelevant to the quiet title action. The Treaty and the Compact only require water deliveries to the states or Mexico, not the named defendants. Because the federal quiet title action only involves the competing claims of the United States and the named defendants, the water rights given to the states or Mexico are irrelevant.

The United States and Texas intimate several times in their brief that, apart from the Compact and the Treaty, the interstate and international nature of the Project favors a federal forum. There are statements in numerous cases that any adjudication of rights in an interstate stream raises questions of federal common law. *See, e.g., Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 110 (1938) ("Jurisdiction over controversies concerning rights in interstate streams is not different from those concerning boundaries. These have been

recognized as presenting federal questions."); *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 n.13 (1981) ("Many of these cases arise from interstate water disputes.  Such cases do not directly involve state boundaries . . . ; they nonetheless involve especial federal concerns to which federal common law applies."); *Illinois v. City of Milwaukee,* 406 U.S. 91, 103 (1972) ("When we deal with air and water in their ambient or interstate aspects, there is federal common law . . . ." (footnote and citation omitted)).

Unlike *Hinderlider* and the other interstate stream cases, this case is not an equitable apportionment dispute between two states.  *Hinderlider* involved a dispute between a water user in Colorado and the Colorado State Engineer, who, pursuant to a Compact with New Mexico, shut off water to Colorado users for a ten day period.  *See* 304 U.S. at 95-97.  The defendant water officials contended that the federal courts lacked jurisdiction, but the Supreme Court held that "whether the water of an interstate stream must be apportioned between the two States is a question of 'federal common law.'"  *Id.* at 110; *see also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427 (1964) ("[*Hinderlider*] implies that no State can undermine the federal interest in equitably apportioned interstate waters . . . .").  The United States and Texas parties contend that the United States seeks to remove a cloud over its title to Project water so that it may fulfill its delivery obligations under the Compact and the Treaty.  The equitable

-30-

apportionment of the Rio Grande is the goal of both the Compact and the Project, they argue. The federal action is, however, a suit for declaratory relief seeking a determination of the relative rights of the United States and the named defendants. The question of whether and how Rio Grande water should be apportioned among states is not directly at issue.

This court declines to expand the interstate equitable apportionment line of cases to encompass this case. The reluctance to create common law is a core feature of federal court jurisprudence. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33-34 (1812) (declining to create a federal common law libel criminal offense). Federal courts should only fashion common law in a "few and restricted" circumstances. *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963). Moreover, federal common law exists, only when "state law cannot be used." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 n.7 (1981). The federal courts created common law in the equitable apportionment disputes because there were dueling state legal regimes. Erwin Chemerinsky, Federal Jurisdiction § 6.2.5 (3d ed. 1999) ("Obviously, in a conflict between two states, neither states' laws can be applied to resolve the dispute. Therefore, in the absence of a pertinent federal statute, federal common law must be created" to ensure interstate harmony.). There is no need in this case for interstitial federal common law. The United States asserts title to Project water

under either New Mexico or Texas law, depending on which right is asserted. There is, however, no uncertainty over which state's laws applies to determine the United States' rights. Because there is no legal vacuum to fill, federal common law need not, and will not, arise in the federal action.

*c. Federal Contracts*

The "obligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). Thus, the question is whether the United States' declaratory judgment action involves obligations to or rights of the United States under its contracts.

The United States' and Texas parties' assertion that the federal action will involve the construction of federal contracts is fatally weakened by the lack of citation to the record. The United States and Texas parties do not cite to specific contractual language relevant to the title dispute that is the subject of this federal action. Indeed, there is not even a citation to a contract contained in the record. Moreover, the United States' complaint fails to mention the existence and relevance of federal contracts. This court declines to "sift through" the record to find support for the appellants' contentions. *See S.E.C. v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (quotation omitted).

**B. Weighing of the *Brillhart/Mhoon* Factors**

In *Brillhart*, the Supreme Court listed several factors to guide a district court's decision whether to exercise jurisdiction over a declaratory judgment action. A district court should evaluate the scope of the state proceeding, whether the claims of all parties can be adjudicated in that proceeding, whether necessary parties have been joined, whether they are amenable to process, and any other factor bearing on the central question of which forum can better resolve the controversy. *See* 316 U.S. at 495. This circuit has adopted a list of five factors a district court should evaluate. *See Mhoon*, 31 F.3d at 983. The *Mhoon* factors are

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*See id.* (quotations omitted)

The district court considered all five *Mhoon* factors. This court has evaluated the record and concludes that the district court's assessment of the *Mhoon* factors was *not* so unsatisfactory as to result in an abuse of discretion.

1.  Whether the declaratory action would settle the controversy and clarify legal relationships

The district court found that the requested federal declaratory relief would not settle the entire controversy over water rights or even clarify the relative rights of the parties to Rio Grande water, because any declaration of the United States' rights to divert, impound, and store Project water would not be binding on parties not joined to the action. The United States and Texas parties, however, define the controversy as involving only the cloud placed on the United States' title by the named defendants. Because the federal action will completely settle this controversy, dismissal pursuant to *Brillhart/Mhoon* was inappropriate, they argue.

The appellants fail to acknowledge that the inquiry into whether the declaratory judgment settles a controversy and clarifies the legal relationships at issue is designed to shed light on the overall question of whether the controversy would be better settled in state court. *See Brillhart*, 316 U.S. at 495. The federal suit may settle the controversy of whether the United States has superior title to the named defendants. As the district court pointed out, however, the declaration of superior title will not be binding on parties not joined to the action. *See State Farm Mut. Auto Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 295 (10th Cir. 1975). There are thousands of water users in New Mexico who may assert a right to Project water just as New Mexico State University and Stahmman Farms have in this case. Their claims will be adjudicated in the comprehensive New Mexico

-34-

stream adjudication. By declining jurisdiction, the district court avoided a piecemeal approach to adjudicating the rights of the United States vis-a-vis innumerable water users in New Mexico. The district court acted within its discretion in determining that the United States' claims against the named defendants and other water users would be better settled in a unified proceeding. *See State Farm Mut. Auto Ins. Co. v. Scholes*, 601 F.2d 1151, 1155 (10th Cir. 1979) (quoting with approval a lower court opinion that considered the "desirability of avoiding piecemeal adjudication"); 10B Charles Alan Wright et al., Federal Practice and Procedure § 2759; *cf. Rienhardt v. Kelly*, 164 F.3d 1296, 1303 (10th Cir. 1999) (noting that "avoidance of piecemeal adjudication may counsel against hearing the case in federal court" in *Colorado River* context).

Appellants also argue the New Mexico adjudication will not settle the federal controversy because the stream adjudication will not resolve rights to store and divert Elephant Butte Reservoir water. The New Mexico proceeding as it currently exists may not encompass storage rights in the Elephant Butte Reservoir, but the New Mexico State Engineer has notified all parties that he intends to include the Reservoir in the stream adjudication.[13] The United States

---

[13] The Notice of Intent, filed with the New Mexico court on April 20, 2000 states in part:

> Notice is hereby given to all parties that the State of New Mexico shall tender a storage and diversion offer of judgment to the United

and Texas parties contend that the Notice of Intent does not guarantee the Reservoir will be included in the stream adjudication. They also argue that the Reservoir cannot be included in the adjudication without adding the portion of the Rio Grande north from the Reservoir to Otowi Gauge, near Santa Fe. There is no merit to either of these contentions.[14]

Although the Notice of Intent is not a guarantee that the Reservoir will be included in the stream adjudication, the district court was well within its discretion in determining that the Notice of Intent signaled that the Reservoir

States upon conclusion of the hydrographic survey for any Rio Grande Project rights the United States may have to store and divert the waters of the Rio Grande in Elephant Butte Reservoir and Caballo Reservoir, to divert said waters below the Reservoirs, and to deliver Rio Grande Project water to the New Mexico-Texas state line and to Mexico under the 1906 Treaty with Mexico.

[14] As to the contention that adding Elephant Butte Reservoir to the New Mexico stream adjudication will necessitate adding the entire Upper Rio Grande, the United States and Texas position is not persuasive. They point to nothing demonstrating the necessity for expansion of the stream adjudication. The *Regents of New Mexico State University* case stands only for the proposition that though the portion of the Rio Grande south of Elephant Butte dam is not a "stream system," the United States waived its sovereign immunity as to any stream adjudication of that portion. *See Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ.*, 849 P.2d 372, 378-79 (N.M. Ct. App. 1993). *Regents* does not address whether the Lower Rio Grande with the addition of Elephant Butte Reservoir would qualify as a stream system or otherwise waive the United States' sovereign immunity.

-36-

likely would be included.[15] The United States and Texas parties have pointed to nothing in the record indicating that the state court will not grant the Engineer leave to amend his complaint to include the Reservoir. The state court has allowed the complaint to be amended four times to reflect changes in parties and claims; it will likely do so again. *See First Nat'l Bank of Santa Fe v. Southwest Yacht & Marine Supply Corp.*, 684 P.2d 517, 520 (N.M. 1984) (amendments to pleadings are generally favored and liberally permitted).

Finally, appellants argue that the New Mexico adjudication would not settle the federal controversy because the stream adjudication excludes the Texas Parties. The district court, however, found that the state court would likely allow the Texas parties to intervene in the stream adjudication. The City of El Paso has been a party to the steam adjudication since it began in 1986. While El Paso Water District's attempt to intervene was opposed by some of the New Mexico parties, when the state court granted the District amicus status it also ruled that the District could request a ruling on its motion to intervene at any time.

---

[15] Unlike a decision under *Colorado River* to refuse jurisdiction, there is no requirement under *Brillhart* that the district court look at the state and federal proceedings only as they currently exist. This court has noted that a factor a district court should consider in deciding to decline jurisdiction over a declaratory judgment action is whether "'the same fact-dependent issues are *likely* to be decided in another pending proceeding.'" *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169-70 (10th Cir. 1995) (quoting *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989)) (emphasis added).

In New Mexico, as in the federal courts, there are two types of intervention, intervention as of right and permissive intervention. *See* N.M. Ct. R. 1-024 (2001).[16] There are obviously common questions of fact and law relating to both the Texas parties' claims to Project water and the claims to Rio Grande water adjudicated in the New Mexico proceeding. The Texas parties may be entitled to intervention as of right since an adjudication of water rights in New Mexico could impede their ability to collect Project water. The continued, unmolested presence of El Paso and the state court's unwillingness to rule out intervention indicate that the Texas parties' assertion of Project water rights water can and will likely be adjudicated in the stream adjudication. Without a showing that intervention is impossible or the state forum is clearly hostile to the parties to the federal suit, this court cannot say that the district court abused its discretion.

An additional reason exists to reject the United States' and Texas parties' argument that the federal suit should proceed because it alone adjudicates the Texas parties' rights to Project water: the Texas adjudication will be more than adequate to decide the rights of the United States vis-a-vis the Texas parties. The

---

[16] Intervention as of right requires (1) a timely application, (2) that the "applicant claims an interest relating to the property," (3) the applicant is situated so that the disposition of the suit may impede the applicant's ability to protect the interest, and (4) the interest is not adequately protected by the existing parties. N.M. Ct. R. 1-024(A)(2). Permissive intervention requires (1) a timely application and (2) that the applicant's claim or defense has a question of fact or law in common with the suit. *See id.* 1-024(B)(2).

United States filed a claim with the TNRCC on April 22, 1996, asserting claims against the Texas parties to the federal lawsuit identical to the claims made in its federal complaint, namely, that it held title to the Project water delivered to the City of El Paso, the El Paso Water District, and the Hudspeth County Conservation and Reclamation Dist. No. 1. According to Texas water law, the adjudication will resolve all storage, diversion, and use rights. *See* Tex. Water Code § 11.307 (Vernon, WESTLAW through 2001 Reg. Sess.) (requiring "[e]very person claiming a water right of *any* nature" to file a claim with the TNRCC during an adjudication) (emphasis added). Thus, the Texas adjudication can be expected to decide the title to Project water delivered to the Texas parties named in the federal suit.

2. Whether the United States is engaging in procedural fencing

The district court was concerned that the United States engaged in procedural fencing because it had moved to dismiss the New Mexico case on jurisdictional grounds several times. The court found that the United States' jurisdictional argument was rejected by every court to consider it, including the New Mexico Court of Appeals, and that the United States brought the present federal action shortly after losing its third attempt to dismiss on jurisdictional grounds.

The United States has attempted at every juncture in the New Mexico

-39-

adjudication to resist jurisdiction. Other parties have made motions to dismiss. The State Engineer himself made several. This preliminary skirmishing has ended, however. After an extended period of pleadings and dismissal motions in the New Mexico proceedings and after realignment, the New Mexico stream adjudication is progressing rapidly. In the three years since the realignment and the denial of the State Engineer's last motion to dismiss, the parties have been cooperating; none have questioned the state court's jurisdiction. Only the United States and Texas parties still resist the stream adjudication.

As the district court found, it is significant that the United States filed the instant action just a short time after the last jurisdictional objections to the New Mexico adjudication were rejected and it became clear the adjudication will proceed to judgment. *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (holding no abuse of discretion when district court determined that insurer's filing of federal declaratory action on eve of insured's state contract suit after waiting three years before seeking declaration constituted procedural fencing). The United States contends that it waited until 1997 to file the present suit because only then did it become clear that the New Mexico and Texas adjudications would not reach the claims enumerated in its federal complaint. The exclusion of Elephant Butte Reservoir from the New Mexico adjudication, however, was apparent from the filing of the first complaint in

1986.  Moreover, the Texas adjudication was initiated in 1994.  This court agrees that the procedural fencing factor weighs against the exercise of jurisdiction.

3.  Whether the exercise of federal jurisdiction would result in friction with the state courts and encroach upon their traditional jurisdiction

The district court expressed concern that if it declared relative rights to Project water, it could cause friction between the federal and state courts.  The court's concern centered around the special role and expertise state courts have in adjudicating water rights.  This court agrees with the district court that a federal declaration of rights could encroach upon the state courts' traditional role as arbiter of water rights disputes.

Water rights adjudications traditionally have been within the ambit of state court expertise.  *See Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 569 (1983) (observing that "considering the specialized resources and experience of the state courts" in adjudicating water rights, it was far from obvious federal adjudications would proceed faster).  Congress recognized as much when it enacted Section 8 of the Reclamation Act, requiring the federal government to procure water for reclamation projects in accordance with state law.  *See* 43 U.S.C. § 383.  As stated by the 1951 Senate Judiciary Committee in discussing Section 8 of the Reclamation Act,

> Down through the years the courts of the respective States marked out the pathway whereby order was instituted in lieu of chaos. [Water] [r]ights were established, and all of this at the expense, trial,

and labor of the pioneers of the West, without material aid from our United States Government until a much later time when irrigation projects were initiated by Congress through the Department of Interior and later the Bureau of Reclamation. Even then Congress was most careful not to upset, in any way, the irrigation and water laws of the Western States.

S. Rep. No. 82-755, at 3 (1951). Declaring title to water would thus encroach upon the traditional jurisdiction of the state courts.

In addition, the federal action carries the danger of grave interference with the state proceedings. The likelihood of such interference is another justification for the refusal of jurisdiction. *See Mhoon*, 31 F.3d at 984 (finding no abuse of discretion when federal proceeding "involved no undue interference with the state proceeding"). The McCarran Amendment was enacted out of the concern that without the participation of the United States, state adjudications, intended to adjudicate the interlocking rights of all users, would be left unable to adjudicate the rights of any. *See* S. Rep. No. 82-755, at 4-5 (1951); *see also United States v. Dist. Court for Eagle County*, 401 U.S. 520, 525 (1971). Precisely the same chaos could result in this case if the United States is permitted to litigate its claim in federal court. Faced with an ongoing federal dispute, the New Mexico court could be faced with the question whether to defer resolution of the claims of water users dependent on the resolution of the United States' fight with the named defendants over title. Unable to reach some claims, and needing to reach all in order to establish priority, the state adjudication could grind to a halt. On the

-42-

other hand, the New Mexico state court could adjudicate the title fight that is the subject of the federal action. The district courts are given discretion to decline jurisdiction over declaratory judgment actions, however, precisely to avoid becoming such an "arena for a race to *res judicata*." *See Mhoon*, 31 F.3d at 983 (quotations omitted).

4. Whether the state remedy is the most effective remedy

The district court concluded that the state adjudications would provide a more effective remedy to the general controversy than the federal declaratory judgment action. The state proceedings would produce a "more comprehensive and cohesive" remedy, because the rights of all, including the parties to the federal action, would be decided. The district court was correct in concluding that the state adjudications are the more effective remedy.

In arguing that the state proceedings are not the more effective remedies, the United States and Texas parties fail to acknowledge the reality of water rights disputes in the West. Thousands of individuals claim water rights that depend on the resolution of the claims of others. The situation has long been recognized as demanding a comprehensive adjudication of all users' claims. *See El Paso & R.I. Ry. Co. v. District Court*, 8 P.2d 1064, 1067 (N.M. 1931). Congress recognized this need when it passed the McCarran Amendment:

> [The concern over inconsistent dispositions of property] is heightened with respect to water rights, the relationships among which are highly interdependent. Indeed, we have recognized that actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings. The consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals.

*Colorado River*, 424 U.S. at 819 (citation omitted). The New Mexico and Texas adjudications are designed to provide such a comprehensive solution to a complex problem. *See United States v. Bluewater-Toltec Irrigation Dist.*, 580 F. Supp. 1434, 1446 (D.N.M. 1984) ("The idea that New Mexico lacks a comprehensive system for adjudication of water rights is not grounded in facts and needs no further comment."); Tex. Water Code Ann. § 11.307 (Vernon, WESTLAW through 2001 Reg. Sess.) (requiring "[e]*very* person claiming a water right of *any* nature" to file a claim with the TNRCC during an adjudication) (emphasis added). As such, they are the preferred mechanisms for settling water rights disputes.

Moreover, a federal declaration of rights will be particularly ineffective. Even if the federal action proceeds, both state adjudications will continue to go forward with the United States as a party. Because a federal declaratory judgment will affect only the named defendants, the United States will be forced to litigate its rights relative to other water users in the state proceedings. The federal declaration can hardly be considered an "effective" remedy since the United

-44-

States will have to reargue numerous factually similar issues against water users excluded from the federal action. *See Runyon*, 53 F.3d at 1169-70 (noting that district courts generally should not entertain jurisdiction over declaratory judgment action involving the "same fact-dependent issues" likely to be decided in another proceeding).

## C. Proper Remedy

This court has not previously addressed the question of the preferred remedy once a district court, in the sound exercise of discretion, determines that it should not exercise jurisdiction over a declaratory judgment action. In *Fox v. Maulding*, this court held that district courts should not dismiss federal actions pursuant to *Colorado River*, but rather should enter stays. *See Fox v. Maulding*, 16 F.3d at 1083. "In the event the state court proceedings do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action." *Id.*

A stay will often be preferable in the declaratory judgment context as well. The *Brillhart/Mhoon* analysis involves some measure of prognostication. In determining which forum would be best, the district court considers such questions as whether the state proceedings will *likely* adjudicate the claims of the federal parties and whether the federal proceeding will serve any useful purpose considering the *likely* scope of the state proceeding. In this case, for example, the

-45-

district court's exercise of discretion involved an appraisal of the likelihood that the United States' rights in the Elephant Butte Reservoir will be adjudicated in the New Mexico proceeding, that the Texas parties will be allowed to intervene, and that the United States' rights will be adjudicated in the Texas proceeding. A stay would allow the district court to quickly reconsider whether the state forum remains the best in which to hear the federal parties' claims should the court's predictions regarding the scope of the state proceedings turn out to be erroneous. *See Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 875 n.2 (8th Cir. 2000) (applying *Brillhart* and noting that a stay is preferred to dismissal "where the possibility of a return to federal court remains"); *see also Kaiser Steel Corp. v. W. S. Ranch Co.*, 391 U.S. 593, 594 (1968) (per curiam). Additionally, a stay may be appropriate if the district court determines that there exists a significant possibility of delay or other procedural inadequacy in the state proceedings. Moreover, the Supreme Court has noted that a stay may be the preferred remedy if the application of a time bar could prevent a dismissed federal action from being refiled. *See Wilton*, 515 U.S. at 288 n.2.

The district court dismissed the United States' suit without providing reasons for its choice of remedy. Without reasons "appellate review is impossible," and the appropriate procedure is to remand for further findings and determinations by the district court. *ARW Exploration Corp. v. Aguirre*, 45 F.3d

1455, 1459 (10th Cir. 1995). Accordingly, we remand to the district court to decide on an appropriate remedy considering the extent to which its decision to decline jurisdiction depended on predictions about the scope of the state proceedings, the possibility of delay or procedural inadequacy in the state proceedings, the possibility that another federal action will be time-barred should the instant suit be dismissed, and any other appropriate factor.

## V. CONCLUSION

This court concludes that the district court's decision to apply *Brillhart* and withhold jurisdiction over this declaratory judgment action was not an abuse of discretion. It is thus unnecessary to resolve whether the district court erred in dismissing under the *Colorado River* doctrine. The district court, however, should consider whether the preferable remedy is to stay the federal proceedings. The judgment of the District Court for the District of New Mexico is therefore **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion.